*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-09-00201-CR

Rosanna **ZAMORA**,
Appellant

v.

**STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-7205
Honorable Ron Rangel, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed: April 7, 2010

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

In two issues, Rosanna Zamora appeals from her conviction for unauthorized use of a vehicle.

Zamora was sentenced to two years imprisonment, but her sentence was suspended and she was

placed on community supervision for five years. As a condition of community supervision, Zamora

was ordered to pay restitution in the amount of $8,555.94. We overrule Zamora's factual sufficiency

issue and sustain her restitution issue in part. Because we sustain Zamora's restitution issue in part,

we reverse the portion of the trial court's judgment awarding restitution and remand this case to the

trial court for a hearing so the trial court may determine a just amount of restitution. We affirm the trial court's judgment in all other respects.

## BACKGROUND

Zamora and the complaining witness, Kelly Rabel, were friends. After Rabel had surgery in April 2005, Zamora lived with Rabel to assist Rabel in caring for her children and her household. In the early morning hours of June 14, 2005, Zamora was involved in a rollover accident that totaled Rabel's car. Zamora was indicted for unauthorized use of a vehicle. At trial, Rabel and Zamora gave conflicting testimony about whether Zamora had permission to use Rabel's car when the accident occurred.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

In her first issue, Zamora argues the evidence was factually insufficient to support the jury's finding that she committed the offense of unauthorized use of a vehicle because the great weight and preponderance of the evidence, including the inferences therefrom, lead to the conclusion that Zamora had permission to use the vehicle.

A person commits the offense of unauthorized use of a vehicle if she intentionally or knowingly operates another's motor-propelled vehicle without the effective consent of the owner. TEX. PENAL CODE ANN. § 31.07(a) (Vernon 2003). Thus, operating a vehicle is unlawful only if the accused is aware that the operation of the vehicle is without the owner's consent. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Testimony that the car owner did not give consent to

operate her vehicle can be sufficient to support a finding that the accused knew she did not have consent to operate the vehicle. *McQueen*, 781 S.W.2d at 604-05; *Battise*, 264 S.W.3d at 227.

In conducting a factual sufficiency review, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (quoting *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)); *see also Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (explaining that the "basic ground rules for post-*Clewis* factual-sufficiency review are well articulated in *Cain v. State.*"). In conducting our review, we must be mindful that a jury has already passed on the facts, and convicted, and we should never order a new trial simply because we disagree with the verdict. *Watson*, 204 S.W.3d at 414. The factual sufficiency analysis can be broken down into two prongs. *Id.* The first prong asks whether the evidence introduced to support the verdict, though legally sufficient, is nevertheless so weak that the jury's verdict seems clearly wrong and manifestly unjust. *Id.* at 414-15. The second prong asks whether, considering conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Id.* at 415.

At trial, Rabel testified Zamora lived in Rabel's house for two weeks in April 2005 and Zamora used Rabel's car less than five times to transport Rabel's children to and from school. Rabel never told Zamora she was free to use her car whenever she wanted. Zamora and Rabel were no longer living in the same household when Zamora totaled Rabel's car on June 14, 2005. However, Zamora had stayed at Rabel's house the previous weekend, and Zamora was going to stay at Rabel's house one more night because Zamora and Rabel were planning to run an errand together the

following day.[1] On the evening of June 13, 2005, Zamora had been given a ride to work, and did not use Rabel's car. That same night, Rabel had gone to bed early because she had a job interview the next morning. On June 14, 2005, shortly before 3:00 a.m., Rabel was awakened by Zamora who was knocking at the doors. Rabel let Zamora into the house and told Zamora, who appeared to be intoxicated, that she should go to sleep. Rabel returned to bed and went back to sleep. At 3:36 a.m., Rabel received a phone call from Zamora. Zamora told Rabel she had "rolled" Rabel's car. When Rabel had fallen asleep earlier that night, her purse and keys were on her dresser; however, when Rabel was awakened at 3:36 a.m., her purse and keys were gone. Immediately after receiving Zamora's call, Rabel called the police and reported her car stolen. Rabel also called Zamora's parents and asked them to come get Zamora's dog and other possessions from her house. Later, when Rabel retrieved items from her totaled car at the impound lot, she found her wallet under the driver's seat. Finally, Rabel stated that on June 14, 2005, Zamora took her car without permission and drove her car without authorization.

Zamora, who also testified at trial, gave a different account of these events. Zamora testified that she had lived with Rabel continuously from late April 2005 until June 14, 2005. When Zamora was staying with Rabel, she used Rabel's car because Rabel said it was more comfortable and the children fit better in it. Zamora took Rabel's children to and from school "very often" in Rabel's car. Zamora's father once helped her take the children to school in his car because they needed to transport a bike to school for a bike rodeo, and the bike would not fit in Rabel's car. According to Zamora, the bike rodeo was in May 2005. On the night of June 13, 2005, Zamora drove to work in

---

[1] Zamora had lost the only key to her car and Rabel was taking her to get a replacement.

Rabel's car with Rabel's permission. When Zamora's shift ended at around 2:30 a.m. on June 14, 2005, Zamora went straight to Rabel's house and let herself in, using the house key on Rabel's key ring. Rabel was awake and on the computer in her bedroom. Zamora showed Rabel the money she had made that night. Rabel indicated she was hungry, and Zamora, who also was hungry, suggested they get some food. Zamora then left the house in Rabel's car, planning to go to a nearby Whataburger. Zamora still had Rabel's keys in her possession. According to Zamora, Rabel knew Zamora was going to use Rabel's car to go get the food.

Here, Zamora focuses her argument on the second prong of the factual sufficiency analysis, *i.e.*, whether, considering conflicting evidence, the jury's verdict is nevertheless against the great weight and preponderance of the evidence. To support her argument, Zamora points to evidence in the record that Zamora was staying at Rabel's house with permission, and argues that if Rabel did not want Zamora to stay in her house, she could have easily denied Zamora access. Next, Zamora argues that, given that she was staying at the house that weekend, and that Rabel would be going to bed early to be ready for a job interview, it made no sense that Rabel would not have given Zamora a house key so Zamora could let herself in when she came home. According to Zamora, the "far more logical inference" was that Zamora was telling the truth and that she went to and from her job in Rabel's car with Rabel's permission and that she left the house to get food in Rabel's car with Rabel's permission. Additionally, Zamora argues it was illogical for her to have driven Rabel's car without her permission because it would have made no sense to have been arrested while her dog and other possessions were still at Rabel's house. Moreover, Zamora argues that the fact that the accident occurred near a Whataburger supports her story that she was using the car to go to a

restaurant to buy food for herself and Rabel. Finally, Zamora argues that when all of the evidence is considered together in a neutral light, it is clear that the great weight and preponderance of the evidence supports Zamora's story.

We disagree. We cannot say that Zamora's testimony is necessarily more logical or makes more sense than Rabel's testimony. "What weight to give contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor." *Cain*, 958 S.W.2d at 408-09. Because the jury was entitled to judge the credibility of witnesses, and could believe all, part, or none of the evidence presented by the parties, it could have accepted Rabel's testimony that Zamora did not have permission to use her car, and rejected Zamora's testimony to the contrary. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (stating the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties). That the jury chose to believe Rabel's testimony over the testimony of Zamora does not indicate the evidence is against the great weight and preponderance of the evidence. *See Johnson v. State*, 23 S.W.3d at 1, 8 (Tex. Crim. App. 2000) (stating due deference must be according the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence). Viewing all of the evidence in a neutral light, we conclude the jury's verdict is not against the great weight and preponderance of the evidence. Zamora's first issue is overruled.

## RESTITUTION ORDER

In her second issue, Zamora argues the trial court abused its discretion by including $2,250.00 in its $8,555.94 restitution order because there was no proof or stipulation as to this

portion of the order. Zamora does not challenge the portion of the restitution order for the value of Rabel's car in the amount of $6,305.94.

The trial court that sentences a defendant convicted of an offense may order the defendant to make restitution to the victim of the offense. TEX. CODE CRIM. PROC. ANN. art. 42.037 (Vernon Supp. 2009). The Code of Criminal Procedure provides that,

> [i]f the offense results in damage to or loss or destruction of property of a victim of the offense, the trial court may order the defendant . . . to pay an amount equal to the greater of: (i) the value of the property on the date of the damage, loss, or destruction; or (ii) the value of the property on the date of sentencing, less the value of any part of the property that is returned on the date the property is returned.

*Id*. at art. 42.037(b)(1)(B). The State has the burden of proving, by a preponderance of the evidence, the amount of the loss sustained by the victim. *Id*. at art. 42.037(k).

We review challenges to restitution orders under an abuse of discretion standard. *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980); *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd). "Restitution must have a factual basis within the loss of the victim that is reflected in the record." *Campbell v. State*, 5 S.W.3d 693, 699 (Tex. Crim. App. 1999); *see also Cartwright*, 605 S.W.2d at 288-89 ("Due process considerations . . . require that there must be evidence in the record to show that the amount set by the court has a factual basis."). Thus, one limit on a trial court's discretion is that the amount of restitution must be just, and it must have a factual basis within the loss of the victim. *Idowu v. State*, 73 S.W.3d 918, 922 n.11 (Tex. Crim. App. 2002); *Campbell*, 5 S.W.3d at 696-97.

The State urges us to overrule Zamora's second issue because the record shows that (1) Rabel's make-up kit, which was in Rabel's car when it was taken by Zamora, was valued at

$2,000.00; and (2) Zamora agreed to pay the additional $250.00 included in the restitution order. First, as to the make-up kit, the State argues there is evidence in the record to support this portion of the restitution order, pointing to Rabel's testimony at the guilt-innocence phase of the trial. On cross-examination, Rabel, who was a professional make-up artist, testified her professional make-up kit was in the back of her car and was worth $2,000.00. We conclude that Rabel's testimony was adequate to support the restitution order. *See Burris v. State*, 172 S.W.3d 75, 78 (Tex. App.—Fort Worth 2005, no pet.) (holding trial testimony from the victim about the amount of medical expenses incurred was adequate to support the restitution order).

On the other hand, nothing in the record shows Zamora agreed to pay the additional $250.00 included in the restitution order. At the sentencing hearing, Zamora's counsel stated,

> [Zamora] is willing to pay restitution for the vehicle in the amount that was listed in the PSI. I believe it was like 63 . . . [$] 6305.94. Now, we do disagree with $2,000.00 worth of make-up in a bottle and some brushes, *but we don't have a problem with the CD's and cell phone and a couple of hair products of the victim.*

(emphasis added). Although defense counsel indicated Zamora had no problem with being ordered to pay restitution for the CD's, cell phone, and hair products mentioned in the presentence investigation report, Zamora's counsel did not agree these items were valued at a specific amount, and there is no evidence in the record showing these items were valued at $250.00. The presentence investigation report does not appear in the record, and we cannot assume the value of the referenced items was $250.00.

We conclude the record supports restitution in the amount of $6,305.94 for Rabel's car and $2,000.00 for Rabel's make-up kit, but fails to support the remaining $250.00 ordered. We,

therefore, conclude the trial court abused its discretion in ordering restitution in the total amount of $8,555.94. Zamora's second issue is overruled in part and sustained in part.

Zamora argues that if we sustain her second issue, we must remand to the trial court for an evidentiary hearing to determine the correct amount of restitution. We agree. *See Barton v. State*, 21 S.W.3d 287, 290 (Tex. Crim. App. 2000) (remanding the case for a hearing to determine a just amount of restitution); *Cartwright*, 605 S.W.2d at 289 (same).

## CONCLUSION

We reverse the restitution order and remand this cause to the trial court for a hearing on restitution. We affirm the judgment in all other respects.

Karen Angelini, Justice

DO NOT PUBLISH