

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-12-00049-CR
_____

RICKEY TAVALES LEWIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 40721-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Rickey Tavales Lewis was convicted by a jury of unauthorized use of a vehicle, a state jail felony. Lewis appeals his conviction and resulting sentence of fourteen months' confinement in state jail on the ground that the evidence was legally insufficient to support the judgment. We affirm the trial court's judgment, finding the evidence legally sufficient to establish Lewis' unauthorized use of a vehicle.

I.      **Factual Background**

Gary Wayne Gilbert owned a car dealership called Gilbert & Cash Motor Company. He enlisted the services of Hands On Detail, a car detailing shop owned by Lewis. Lewis assured Gilbert that he would have a white Chevy Trailblazer detailed and ready "by Friday," April 22, 2011. Gilbert recorded the vehicle's mileage at 177,912 when it was delivered to the shop on April 20, 2011.

The vehicle was not returned on April 22, and Gilbert noticed that Hands On Detail was closed. He "called all the next week and all the next week and never got an answer," despite leaving several voicemails on Lewis' cell phone. The business remained closed during this time. Gilbert testified that he "went by there every day" and left notes at Hands On Detail, but that "[t]hey would be tore off, gone, but nobody was ever in there."

After two weeks of waiting to hear from Lewis, Gilbert tracked the vehicle using a Global Positioning System (GPS). The GPS tracking system showed that the vehicle had been at Lewis' shop in Gladewater, Texas, until May 6, 2011. Thereafter, GPS located the vehicle in the

Texas cities of West, Marshall, and Ore City. Gilbert reported the missing car, along with its last known address, to the police. The car was at Lewis' girlfriend's home in Marshall.

Lewis was at the residence when the vehicle was recovered by Gilbert. "It had 178,225 miles on it," "313 more miles than when it had" first been left in Lewis' care. Lewis "sunk his head" when he was confronted by the GPS printout. He told Gilbert that he had picked up the car at a time when it was in Ore City. Gilbert testified that even though Lewis was "act[ing] like he was trying to get it detailed so he [could] get it back to me," the car "had wrappers and stuff thrown all over the inside, and half-eaten food and it needed to go to the detail shop, again."

Gilbert affirmed that Lewis "did not have authorization to drive that car anywhere but between my car lot and his place, which is two-and-a-half miles." Gilbert testified that Lewis' "car was broke down; he had nothing to drive. And it looks like he just—I thought he just took mine."

Officer Kenneth Phillips testified that Lewis was the only person at the residence when the vehicle was located. According to Phillips, Lewis claimed that he "had left it at the business for another worker to finish," had "tried to contact Mr. Gilbert a couple of times," and had actually spoken with him "on a certain date." Lewis told Phillips he was going to return the car the following week.

During testimony from defense witnesses, differing versions of what could have happened to the car were presented. Marlon Dewayne Gordon, an employee of Lewis' shop, testified that Gilbert had entrusted the vehicle to another employee, Elijah Morrow. In an attempt to explain why the vehicle might have been tracked to Ore City, Gordon testified that

3

Morrow did not have a car and that he lived "[a]round the Ore City area." Gordon also confirmed that Lewis' car was broken down[1] and claimed that he was out of town in Mississippi.

Turner testified that Lewis had never come to her house in a vehicle from the detail shop during their three-year relationship. She told the jury that Lewis was out of town in Mississippi for the purpose of moving his brother. According to Turner, Lewis left on May 2, 2011, and rented a car from Hertz Rent-a-Car to make the drive. Turner testified that she picked Lewis up from the Longview Hertz on May 8 and was surprised to find "a white SUV in [her] yard."

During cross-examination, it was established that Gilbert's vehicle was actually in Ore City during the day and time that Turner testified it was in front of her house. Turner stated she was there with Lewis when he rented a car from Hertz. Greg Bowens, branch manager of the Longview Hertz Rent-a-Car, testified that Lewis' name did not show up in the Hertz system in May 2011. Turner then testified that the car was rented by Lewis' uncle Stanley O'quinn; however, Bowens confirmed that a search for O'quinn's name only produced a rental in the month of February.[2]

## II.    Legally Sufficient Evidence Showed that Lewis Operated Gilbert's Vehicle

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of unauthorized use of a vehicle beyond a reasonable doubt. *Brooks v. State*, 323

---

[1]Lewis' girlfriend, Daria Turner, testified that Lewis had a "[19]83 pickup and a Town Car."

[2]O'quinn testified that he rented a vehicle for Lewis and that he remembered seeing Turner there.

4

S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979));

*Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency

review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18

(Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks*

opinion, while keeping in mind that the credibility of witnesses is the sole province of the jury

and that we "must give deference to 'the responsibility of the trier of fact to fairly resolve

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*

443 U.S. at 318–19); *see Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011,

pet. ref'd).

Legal sufficiency of the evidence is measured by the elements of the offense as defined

by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment,

does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's

theories of liability, and adequately describes the particular offense for which the defendant was

tried." *Id*.

A person commits the offense of unauthorized use of a vehicle if he "intentionally or

knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective

consent of the owner." TEX. PENAL CODE ANN. § 31.07 (West 2011). The indictment in this

case alleged that Lewis intentionally or knowingly operated an automobile owned by G. Gilbert

5

without his consent. In his briefing, Lewis appears to challenge whether the vehicle was operated. However, there is no question that the vehicle was operated since it was driven through several Texas cities during the time it was missing. Rather, Lewis only challenges whether the State proved that *he* was the person who operated the vehicle.

The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *see Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). With circumstantial evidence, as long as "the verdict is supported by a reasonable inference, it is within the province of the fact[ ]finder to choose which inference is most reasonable." *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009.).

Here, Gilbert testified that Lewis was the person initially entrusted with the vehicle. After Lewis failed to timely return the vehicle, Gilbert made several attempts to contact Lewis on his cell phone. Gilbert noticed that Lewis' shop was closed over the next two weeks and that notes he left at the shop had disappeared. There was testimony that Lewis' vehicles were inoperable. GPS tracking confirmed that the car had been driven to several Texas cities and was finally located outside Lewis' girlfriend's home. According to Phillips, Lewis was there alone at the time the car was located and told Phillips that he had "tried to contact Mr. Gilbert a couple of times" to return the car. When Gilbert arrived at Turner's home, Lewis made a statement that he had picked up the car on a day when GPS revealed it to be in Ore City. The jury's finding that Lewis was the person who operated Gilbert's vehicle while it was missing was a reasonable inference deduced from the evidence at trial.

6

"The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony." *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). Likewise, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Id.* Although there was some testimony from Lewis' girlfriend, uncle, and employee that Lewis may have been in Mississippi, the jury was free to give less weight to this evidence as it turned on credibility and demeanor. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

Operation of the vehicle without the owner's consent must be intentional or knowing. Intent may be inferred from circumstantial evidence, such as the defendant's acts, words, or conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Gilbert testified that Lewis was to return the vehicle on April 22, that Lewis told Gilbert he picked up the car during the time it was missing, and that Lewis failed to return Gilbert's telephone calls and written notes. Phillips testified to statements made by Lewis indicating that he was going to return the car—in other words, that Lewis knew that the car did not belong to him. The vehicle, which Lewis was supposed to detail, contained food wrappers and other garbage when it was located, and it had been driven 313 miles. Gilbert testified that Lewis "sunk his head" when he was confronted by the GPS printout. The evidence was legally sufficient for the jury to determine that the operation of the vehicle was intentional or knowing.

In order to constitute unauthorized use, operation of the vehicle must be without consent. After permission to use a vehicle is given, operation of the vehicle is without consent if it exceeds the scope of consent. *See Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *Dodson v. State*, 800 S.W.2d 592, 593–94 (Tex. App.—Houston

[14th Dist.] 1991, pet. ref'd).   Lewis was entrusted with the vehicle for the sole purpose of detailing it and returning it to Gilbert on April 22, 2011.  The evidence was sufficient for the jury to find that the operation of the vehicle beyond that scope was without Gilbert's consent.

We find the evidence legally sufficient for a jury to find that Lewis intentionally or knowingly operated Gilbert's vehicle without Gilbert's effective consent.

## III.    Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     November 26, 2012
Date Decided:       December 13, 2012

Do Not Publish