Elier LOPEZ–VIZCAINO, Appellant,

v.

ACTION BAIL BONDS, INC., Respondent.

No. WD 55157.

Missouri Court of Appeals, Western District.

Oct. 26, 1999.

John Kurtz, Kansas City, for Appellant.

Edward Pendleton, Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

Eiler Lopez–Vizcaino sued Action Bail Bonds, Inc., claiming that he suffered humiliation, mental distress, inconvenience, loss of enjoyment of life, emotional pain and suffering, embarrassment and mental anguish when bondsmen working for Action Bail Bonds forced him to accompany them to police headquarters. A jury awarded Lopez–Vizcaino $15,000 in actual damages. Lopez–Vizcaino appeals, asserting that the circuit court erred in entering a directed verdict on his claim for punitive damages and in refusing to give a punitive damages instruction to the jury.[1] We agree and reverse the circuit court's judgment.

Lopez–Vizcaino was born in Cuba and emigrated to the United States in 1994. On October 12, 1994, two bondsmen from Action Bail Bonds, searching for Jover Lopez, Lopez–Vizcaino's brother, went to Lopez–Vizcaino's house in Kansas City.

When Lopez–Vizcaino opened the door, the bondsmen told him that they were looking for Jover Lopez and showed him a picture. The parties disputed whether Lopez–Vizcaino resembled the person in the picture. Lopez–Vizcaino told the bondsmen that they wanted his brother, not him. Lopez–Vizcaino then showed the bondsmen his driving license, his employment authorization card and his Social Security card.

Because the bondsmen apparently did not believe Lopez–Vizcaino, he telephoned the police, and the bondsmen telephoned Mary Ann Marie George Thomas, Action Bail Bonds' employee. After two police officers and Thomas arrived at the house, Lopez–Vizcaino showed all of his identification and documents to them.

Lopez–Vizcaino repeatedly informed the bondsmen, the police and Thomas that they were looking for his brother. Several other people, including Duniesky Niera, Raydel Acosta and Rosa Lopez, told them that Lopez–Vizcaino was not Jover Lopez. The bondsmen and Thomas then searched the house. Thomas said at trial:

> I looked through the house to try to find out if we had the right person because this individual—I was almost convinced that he wasn't the person we were looking for; and I wanted to give him the benefit of the doubt. So we looked through the house to see if there was anybody else in the house that we might closer identify.

Finding no one else, the bondsmen handcuffed Lopez–Vizcaino, forced him into their car, and took him to Kansas City Police Department headquarters.

At police headquarters, the police photographed and fingerprinted Lopez–Vizcaino, took his shoes and belongings, and placed him in a locked cell with four or five other people. The police held him in the cell from 5:00 P.M. to 7:30 P.M. The police determined that Lopez–Vizcaino was not Jover Lopez, and they telephoned Alex Thomas, Action Bail Bonds' owner, and asked him what he wanted them to do. Alex Thomas told them that he would drive to the jail, get Lopez–Vizcaino and would drive him home. In the meantime, Jover Lopez arrived at the police station, and the police took him into custody.

In his only point on appeal, Lopez–Vizcaino asserts that the circuit court erred in directing a verdict on his claim for punitive damages and in refusing to submit

---

1. Action Bail Bonds did not file a brief or respond to Lopez–Vizcaino's appeal.

a punitive damages instruction to the jury. We agree.

Because Lopez–Vizcaino sought punitive damages, the law placed a more demanding burden on him than the burden he faced in proving the underlying tort action against Action Bail Bonds. His burden was to establish by clear and convincing evidence that Action Bail Bonds' conduct, performed through its employees and agents, was outrageous because of their evil motive or reckless indifference to Lopez–Vizcaino's rights. *Rodriguez v. Suzuki Motor Corporation*, 936 S.W.2d 104, 110–11 (Mo. banc 1996); *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989).

■ In determining whether to send the case to the jury, the circuit court was obligated to determine whether Lopez–Vizcaino had presented clear and convincing evidence that the bondsmen had acted outrageously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "clear and convincing evidence standard" is a more demanding standard that the law imposes when it deems the interests at stake to be "'more substantial than mere loss of money.'" *Rodriguez*, 936 S.W.2d at 110 (quoting *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). A request for punitive damages is such a case. "Punitive damages ... are like other cases requiring the clear and convincing standard of proof: [T]he remedy is so extraordinary or harsh that it should be applied only sparingly." *Id.* In a search for clear and convincing evidence, the circuit court must scrutinize the evidence in much closer detail than it does in cases in which the standard of proof is a mere preponderance. *Roginsky v. Richardson–Merrell, Inc.*, 378 F.2d 832, 851 (2d Cir. 1967) (majority opinion by Friendly, J.); *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 61, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (O'Connor, J., dissenting).

■ The courts have not been precise in describing "clear and convincing evidence." Most typically, the courts say that evidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the evidence in opposition and if it causes the fact finder to have an abiding conviction that the evidence is true. *In the Interest of M.J.A.*, 826 S.W.2d 890, 896 (Mo.App.1992); *Lewis v. FAG Bearings Corporation*, Case No. SD 22379 and 22399, slip op., 1999 WL 771602 (Mo.App. September 30, 1999); *In re Marriage of Jennings*, 910 S.W.2d 760, 763 (Mo.App.1995). Although the courts speak of evidence that "instantly tilts the scales," the circuit court does not engage in a simple, comparative weighing of the evidence in deciding whether a plaintiff has made a submissible case. The circuit court must determine whether the evidence—giving full play to the jury's right to determine credibility, weigh the evidence and draw justifiable inferences of fact—is sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

■ The evidence in this case was susceptible to differing reasonable and convincing interpretations. Reasonable persons could have concluded that Mary Ann Thomas and the bondsmen were unsure of Lopez–Vizcaino's identity and took him to police headquarters, not for an evil motive, but for the purpose of getting a trustworthy identification of him. Thomas testified that they took Lopez–Vizcaino to police headquarters for the purpose of getting an identification of him that was trustworthy. Although she had reason to doubt that he was Jover Lopez, she was uncertain and wanted police help in identifying him. Thomas acknowledged that Lopez–Vizcaino's identification did not appear to be false or altered, but she still was suspicious because of her belief that persons "with

**894**

Spanish names [have] middle names [that] are their mother's maiden name. Their last names are their father's name. In the United States ... they will bond out under their first name and their mother's maiden name and forget their last name." She also said that she thought that Lopez–Vizcaino's employment card was bogus because she had never seen one. She said that, although Lopez–Vizcaino presented identification with a different name than the person for whom they were looking, she thought he looked like Jover Lopez' picture, and she was not sure whether they could trust the identification that he presented.

Lopez–Vizcaino, however, presented evidence that, if believed by the jury, established with convincing clarity that Action Bail Bonds' bondsmen took Lopez–Vizcaino either for the unacceptable purpose of "flushing out" his brother or with conscious indifference to Lopez–Vizcaino's rights. Lopez–Vizcaino denied that he looked like the man in the bondsmen's picture, and several people at his house assured Thomas and the bondsmen that he was not Jover Lopez. Lopez–Vizcaino had identification that did not appear to be false or altered and that indicated that he was not Jover Lopez. This was clear and convincing evidence that the bondsmen acted outrageously.

Because a reasonable juror could or could not have been clearly convinced by the evidence concerning Action Bail Bonds' outrageous conduct and evil motive or reckless indifference, the circuit court had to let the jury decide the matter. *Anderson*, 477 U.S. at 253–54, 106 S.Ct. 2505. Because Lopez–Vizcaino presented clear and convincing evidence, if believed, that established outrageous conduct by Action Bail Bonds, the circuit court erred in directing a verdict concerning Lopez–Vizcaino's punitive damages claim. We, therefore, reverse the circuit court's judgment regarding the punitive damages issue and remand for a new trial only on this issue.

PATRICIA BRECKENRIDGE, Presiding Judge, and VICTOR HOWARD, Judge, concur.