ACCEPTED
13-14-00683-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/26/2015 12:10:48 PM
CECILE FOY GSANGER
CLERK

## No. 13-14-683-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/26/2015 12:10:48 PM
CECILE FOY GSANGER
Clerk

## CHRISTOPHER SIEBERT, APPELLANT,

### v.

## THE STATE OF TEXAS, APPELLEE.

FILED
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**08/26/15**

**CECILE FOY GSANGER, CLERK**
BY CCoronado

ON APPEAL FROM THE 94TH DISTRICT COURT
NUECES COUNTY, TEXAS

## BRIEF FOR THE STATE

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

Attorney for Appellee

## ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................. ii

SUMMARY OF THE ARGUMENT ............................................................ 1

ARGUMENT ................................................................................................ 2

**Reply Point No. 1.**
**There was legally sufficient evidence to support the conviction, and**
**specifically to infer that Siebert knew that he lacked consent to operate**
**the stolen vehicle.** ................................................................................... 2
    **I. Statement of Facts.** ........................................................................ 2
    **II. Standard of Review.** .................................................................... 3
    **III. The Knowledge Element of Unauthorized Use.** ..................... 5

**Reply Point No. 2.**
**The trial court did not commit egregious error by including in the**
**abstract portion of the jury charge an instruction concerning the mens**
**rea for a result-oriented offense.** ......................................................... 8
    **I. Statement of Facts.** ........................................................................ 8
    **II. Superfluous Definitions.** ............................................................. 9
    **III. Application.** ................................................................................ 11

**Reply Point No. 3.**
**Siebert's trial counsel was not ineffective for failing to object to the jury**
**charge or to the prosecutor's closing argument.** .................................. 13
    **I. Standard of Review.** ..................................................................... 13
    **II. Statement of Facts.** ...................................................................... 15
    **III. Deficient Performance.** .............................................................. 18
        *A. The Jury Charge.* ..................................................................... 18
        *B. Closing Argument.* .................................................................. 18
    **IV. Prejudice.** .................................................................................... 20

PRAYER ...................................................................................................... 21

RULE 9.4 (i) CERTIFICATION ................................................................. 22

CERTIFICATE OF SERVICE .................................................................... 22

# INDEX OF AUTHORITIES

## Cases

*Acosta v. State*, 429 S.W.3d 621 (Tex. Crim. App. 2014). ........................ 4, 5

*Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1984). ..........................9

*Arline v. State,* 721 S.W.2d 348 (Tex. Crim. App. 1986). .............................9

*Barnes v. United States*, 412 U.S. 837, 93 S. Ct. 2357 (1973)........................6

*Battise v. State*, 264 S.W.3d 222 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). ..............................................................................................................5

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). .............................3

*Crenshaw v. State*, 378 S.W.3d 460 (Tex. Crim. App. 2012). ..................... 10

*Cueva v. State*, 339 S.W.3d 839 (Tex. App.—Corpus Christi 2011, pet. ref'd). ....................................................................................................... 13, 14

*Demary v. State*, 798 S.W.2d 376 (Tex. App.—Beaumont 1990, no pet.). ....6

*Gardner v. State*, 780 S.W.2d 259 (Tex. Crim. App. 1989)............................5

*Goodspeed v. State,* 187 S.W.3d 390 (Tex. Crim. App. 2005). ................... 15

*Hardesty v. State,* 656 S.W.2d 73 (Tex. Crim. App. 1983)............................6

*Hernandez v. State,* 726 S.W.2d 53 (Tex. Crim. App. 1986)....................... 13

*Hooper v. State,* 214 S.W.3d 9 (Tex. Crim. App. 2007). ...............................4

*Hughes v. State*, 897 S.W.2d 285 (Tex. Crim. App. 1994). ................... 10, 11

*Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781 (1979). ........................ 3, 4

*Jacobs v. State*, 05-01-01864-CR, 2002 WL 31835745 (Tex. App.—Dallas Dec. 19, 2002, no pet.) (not designated for publication). ............................ 12

*Johnson v. State,* 871 S.W.2d 183 (Tex. Crim. App. 1993). ...........................4

*Mallett v. State,* 65 S.W.3d 59 (Tex. Crim. App. 2001). .............................. 14

*Mata v. State*, 226 S.W.3d 425 (Tex. Crim. App. 2007). .................. 14, 15, 19

*McQueen v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989). .............. 5, 6, 12

*Medina v. State*, 7 S.W.3d 633 (Tex. Crim. App. 1999). ............................ 10

*Padilla v. State*, 326 S.W.3d 195 (Tex. Crim. App. 2010) .............................4

*Patrick v. State*, 906 S.W.2d 481 (Tex. Crim. App. 1995) ........................ 9-11

*Plata v. State,* 926 S.W.2d 300 (Tex. Crim. App. 1996). ............................. 10

*Poncio v. State*, 185 S.W.3d 904 (Tex. Crim. App. 2006). ............................6

*Roberts v. State*, 220 S.W.3d 521 (Tex. Crim. App. 2007). ......................... 14

*Strickland v. Washington,* 466 U.S. 664 (1984). .................................... 13, 14

*Thompson v. State,* 9 S.W.3d 808 (Tex. Crim. App. 1999)......................... 14

*White v. State*, 844 S.W.2d 929 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). ...............................................................................................................6

*Ex parte White,* 160 S.W.3d 46 (Tex. Crim. App. 2004). ........................... 18

*Wilson v. United States*, 162 U.S. 613, 16 S. Ct. 895 (1896). ........................6

**Statutes & Rules**

Tex. Penal Code § 31.07. ................................................................................5

NO. 13-14-683-CR

| | | |
|---|---|---|
| CHRISTOPHER SIEBERT, | § | COURT OF APPEALS |
| Appellant, | § | |
| | § | |
| V. | § | FOR THE THIRTEENTH |
| | § | |
| THE STATE OF TEXAS, | § | |
| Appellee. | § | DISTRICT OF TEXAS |

**BRIEF FOR THE STATE**

TO THE HONORABLE COURT OF APPEALS:

**SUMMARY OF THE ARGUMENT**

*First Issue* -- The owner's testimony that she did not give Siebert or anyone else permission to operate her truck provided sufficient evidence for the jury to infer that Siebert knew he lacked such permission or consent when he was arrested only a day after the truck was stolen.

*Second Issue* -- Inclusion of superfluous mental state definitions in the abstract portion of the jury charge was harmless in view of a correct statement of the elements in the application paragraph.

*Third Issue* – Siebert's trial attorney was not deficient in failing to object to the definitions in question, in view of the fact that these superfluous definitions were rendered irrelevant and harmless by the correct instructions in the application paragraph. In addition, the prosecutor did not misstate the law in his jury argument merely because he did not discuss all

mental elements of the offense of Unauthorized Use of a Motor Vehicle, nor has Siebert shown that his trial attorney was not exercising sound trial strategy in refraining from objecting to that argument.

## ARGUMENT

### Reply Point No. 1.
**There was legally sufficient evidence to support the conviction, and specifically to infer that Siebert knew that he lacked consent to operate the stolen vehicle.**

### I. Statement of Facts.

Christopher Siebert was indicted for Unauthorized Use of a Motor Vehicle, charging specifically that he intentionally or knowingly operated an automobile without the effective consent of Mary Saylor, the owner. (CR p. 5)

At trial, Mary Saylor testified that, while she was visiting her husband in the hospital on the evening of January 4, 2014, her truck was taken from the parking lot. (RR vol. 4, pp. 13-16) Saylor testified that she did not know Siebert, that she did not give him the keys to the truck, nor did she give Siebert or anyone else permission to use her truck. (RR vol. 4, p. 20)

Joel Silva testified that, on January 5, 2014, the day after the truck had been stolen, he witnessed Siebert breaking into another vehicle and returning to the stolen truck with property from that vehicle. (RR vol. 4, pp. 34-36)

2

Police Officer Douglas May testified that, on January 5, 2014, he was dispatched to a certain location in reference to an auto burglary in progress. (RR vol. 4, pp. 40-41) Officer May then stopped Siebert driving the stolen truck and recovered from that truck tools that had been stolen from the other vehicle. (RR vol. 4, p. 43) Officer May identified Siebert as the person he arrested driving Saylor's truck (RR vol. 4, pp. 47-48), and testified that Siebert was the driver and sole occupant in the stolen truck. (RR vol. 4, pp. 49-50) Officer May also testified that he found the keys to the truck in the ignition. (RR vol. 4, p. 59)

On the recording of Officer May's traffic stop, entered into evidence as SX # 2, at approximately time marker 4:30, Siebert claimed that "a guy loaned me the truck." At trial, the State offered only the first five minutes of the recording into evidence and played this for the jury. (RR vol. 4 pp. 45-48)

## II. Standard of Review.

In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). In *Brooks v. State*, 323

S.W.3d 893 (Tex. Crim. App. 2010), the Court of Criminal Appeals abandoned factual sufficiency review and determined that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient. This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (quoting *Jackson*, 443 U.S. at 319).

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In such cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Acosta*, 429 S.W.3d at 625; *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

Moreover, the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence. *Acosta*, 429 S.W.3d at 625.

### III. The Knowledge Element of Unauthorized Use.

A person commits Unauthorized Use of a Motor Vehicle if "he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." Tex. Penal Code § 31.07 (a).

In order to be guilty of Unauthorized Use of a Motion Vehicle, the defendant must have known that he did not have the consent of the owner to operate the vehicle in question. *Gardner v. State*, 780 S.W.2d 259, 262-63 (Tex. Crim. App. 1989); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989) (the unauthorized use of a motor vehicle is a "circumstances" type offense, and the culpable mental state of "knowingly" must apply to those surrounding circumstances).

However, the owner's testimony that he or she had not given the defendant or anyone else consent to operate the vehicle provides sufficient circumstantial evidence to also infer that the defendant knew he did not have consent at the time he operated the vehicle. *McQueen*, 781 S.W.2d at 604-05; *Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.]

5

2008, pet. ref'd); *White v. State*, 844 S.W.2d 929, 932 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *Demary v. State*, 798 S.W.2d 376, 378 (Tex. App.—Beaumont 1990, no pet.).    In *McQueen*, the stipulated evidence showed that the vehicle had been stolen only the day before the defendant was arrested operating it.  781 S.W.2d at 601.  Similarly, in *White*, the defendant was arrested driving the vehicle only two days after it had been stolen.  844 S.W.2d at 931.

In addition, even when the defendant claims that someone else, whom he believed to be the owner, gave him consent to operate the vehicle, the jury is free to reject this evidence.  *See McQueen*, 781 S.W.2d at 605; *Demary*, 798 S.W.2d at 378.

This inferred knowledge of lack of consent appears related to the long-standing inference of guilt in theft and burglary cases when the defendant is found in the unexplained possession of recently stolen property. *Poncio v. State*, 185 S.W.3d 904, 904-05 (Tex. Crim. App. 2006); *Hardesty v. State,* 656 S.W.2d 73, 76–77 (Tex. Crim. App. 1983); *see also Barnes v. United States*, 412 U.S. 837, 843, 93 S. Ct. 2357 (1973) (inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods); *Wilson v. United States*, 162 U.S. 613, 619, 16 S. Ct. 895 (1896) (Possession of the fruits of crime, recently after its commission, justifies the

inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence.).

In other words, if finding the defendant in unexplained possession of a recently stolen vehicle creates an inference that he stole the vehicle, *a fortiori* it creates an inference that he lacked permission to operate that vehicle for purposes of Unauthorized Use of a Motor Vehicle.

In the present case, Saylor's testimony that she had not given anyone permission to operate her truck provided sufficient evidence for the jury to infer that Siebert knew he lacked consent when he was arrested on the following day driving the truck.

Nor was the jury required to believe Siebert's claim that some unidentified "guy" loaned it to him. Common sense suggests that an auto thief does not immediately loan out a stolen vehicle the next day to an innocent person.  Unlike a quick sale, there is no incentive to make the loan and only a heightened chance that the vehicle will be discovered and the innocent lessee will turn the thief over to the authorities.

Siebert's first issue on appeal should be overruled.

**Reply Point No. 2.**
**The trial court did not commit egregious error by including in the abstract portion of the jury charge an instruction concerning the mens rea for a result-oriented offense.**

**I. Statement of Facts.**

At the charge conference, Siebert raised no objection to the guilt-innocence jury charge. (RR vol. 4 p. 77)

The abstract portion of that charge instructed the jury, in pertinent part, as follows:

> 1.
> A person commits the offense of unauthorized use of a vehicle if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.
>
> \*      \*      \*
> 3.
> A person acts intentionally, or with intent, with respect to the nature of his conduct *or to a result of his conduct* when it is his conscious objective or desire to engage in the conduct *or cause the result.*
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.*

(CR p. 62-63) (emphasis added)  The italicized portions are the result-oriented mens rea which Siebert complains should not have been included.

The application paragraph of the charge then instructed the jury as follows:

8

4.

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, CHRISTOPHER SIEBERT, on or about January 5, 2014, in Nueces County, Texas, as alleged in the indictment, did then and there intentionally or knowingly operate a motorpropelled vehicle, to-wit: an AUTOMOBILE, without the effective consent of Mary Saylor, the owner thereof, you will find the defendant guilty of the offense of Unauthorized Use of Motor Vehicle and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

(CR p. 64)

The jury found Siebert guilty, as alleged in the indictment. (CR p. 69)

## II. Superfluous Definitions.

For charge error that was not preserved at trial, the error must have been so harmful that the defendant was denied "a fair and impartial trial," such that he suffered actual "egregious" harm. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

The Court of Criminal Appeals has recently explained the distinction between the abstract and application paragraphs of the jury charge, as follows:

It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction. The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. An abstract

9

charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory. Generally, reversible error occurs in the giving of an abstract instruction only when the instruction is an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph.

*Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (citations omitted).

Accordingly, when the facts, as applied to the law in the application paragraph, point the jury to the appropriate portion of the definitions, no harm results from the trial court's failure to limit the definitions of culpable mental states in the abstract portion of the charge. *Hughes v. State*, 897 S.W.2d 285, 296-97 (Tex. Crim. App. 1994); *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Patrick*, 906 S.W.2d at 492-93.

Thus, the inclusion of a merely superfluous abstraction never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs. *Plata v. State*, 926 S.W.2d 300, 302–3 (Tex. Crim. App. 1996); *see also Medina*, 7 S.W.3d at 640 (citing *Plata*).

Specifically, when the jury charge includes overbroad mental state definitions, the Court of Criminal Appeals looks to the factual context in which the mental state is charged in the application paragraph and whether it

becomes apparent in context which mental state applies to which conduct element of the offense. *See Hughes*, 897 S.W.2d at 296.

For example, the Court of Criminal Appeals has held in a murder case that inclusion of such superfluous instructions are harmless when the application paragraph instructed the jury to convict only if it found that the defendant did "intentionally cause the death" of the victim, noting that:

> Although the definitions of "intentionally" and "knowingly" indiscriminately set forth the three alternative conduct elements, when those terms are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense. For instance, the application paragraph states that appellant "did intentionally cause the death of [the victim.]" The term intentionally directly modifies the phrase "cause the death". Referring back to the definitions of culpable mental states, it is obvious that the "result of conduct" and cause the result language are the applicable portions of the full code definitions. We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense.

*Patrick*, 906 S.W.2d at 493 (citations omitted).

### III. Application.

In the present case, as discussed in connection with the first issue on appeal, Unauthorized Use of a Motor Vehicle "encompasses two 'conduct elements', viz: that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the

effective consent of the owner (circumstances surrounding conduct)." *McQueen*, 781 S.W.2d at 604.

Specifically, with regard to charging Unauthorized Use, we should assume that the jury will read the application paragraph in a logical and common-sense manner in applying the mental state element. To that end, the Dallas Court of Appeals reasoned as follows:

> In the court's charge, the word "knowingly" precedes the act of operating another's vehicle. Since operating another's vehicle is not criminal by its nature, a logical reading of the phrase is that the word "knowingly" applies to the "circumstances" surrounding his conduct of operating another's vehicle. Thus, in an unauthorized use of a motor vehicle case, a culpable mental state applies to whether the defendant knew his use of the motor vehicle was without the effective consent of the owner.

*Jacobs v. State*, 05-01-01864-CR, 2002 WL 31835745, at *2 (Tex. App.— Dallas Dec. 19, 2002, no pet.) (not designated for publication).

Accordingly, a common-sense reading of the application paragraph of the present charge pointed the jury to the appropriate nature of conduct and circumstances surrounding conduct definitions.

In his brief, Siebert suggests that the charge might have convinced the jury to find him guilty based on his knowledge that he caused damage to the vehicle, rather than his knowledge that he did not have permission to operate it. (Appellant's Brief p. 24) However, nowhere in the charge is there any suggestion that damage to the vehicle is an element of the present offense,

12

nor was damage ever argued as an element at trial. It would be unreasonable to assume that, because of an abstract definition concerning the mental state for a result-oriented offense, the jury thereafter ignored the application paragraph and went searching through the evidence to find a result to pin that mental state on and to replace the charged elements as a means of finding Siebert guilty. This would be to assume a renegade jury, rather than one that was following the application paragraph of the charge.

Siebert's second issue on appeal should be overruled.

**Reply Point No. 3.**
**Siebert's trial counsel was not ineffective for failing to object to the jury charge or to the prosecutor's closing argument.**

**I. Standard of Review.**

To establish a claim for ineffective assistance of counsel, appellant must show (1) his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 664, 668 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *Cueva v. State*, 339 S.W.3d 839, 857 (Tex. App.—Corpus Christi 2011, pet. ref'd). Review of counsel's representation is highly deferential, and ineffective assistance will be found only if the appellant overcomes the strong presumption that his counsel's

13

conduct fell within the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 689; *Cueva*, 339 S.W.3d at 858.

In addition, allegations of ineffectiveness of counsel must be firmly founded in the record. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Cueva*, 339 S.W.3d at 858. In most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Mallett,* 65 S.W.3d at 63; *Thompson v. State,* 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *see also Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) (silent record as to why counsel failed to object to prosecutor's argument failed to rebut presumption that the decision not to object was reasonable). The Court of Criminal Appeals has said that "the presumption that trial counsel's performance was reasonably based in sound trial strategy, coupled with the absence of any supporting evidence in the record of unreasonableness, compels a reviewing court to consider ways in which trial counsel's actions were within the bounds of professional norms." *Mata*, 226 S.W.3d at 431.

To warrant reversal without affording counsel the opportunity to outline the reasons for his omission, the challenged conduct must be "so outrageous that no competent attorney would have engaged in it." *Roberts v. State*, 220 S.W.3d 521, 533-34 (Tex. Crim. App. 2007) (quoting

*Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)); *see also Mata*, 226 S.W.3d at 430 (applying this standard to trial counsel's failure to object to allegedly improper argument).

## II. Statement of Facts.

In his opening statement at trial, Siebert's attorney stated to the jury, "[t]hey have to prove that Mr. Siebert intentionally and knowingly, in essence, knew that he didn't have the effective consent of Mary Saylor to drive that vehicle, because that's gonna be the issue of this case." (RR vol. 4, p. 10) However, he then also stated to the jury, "You're here for one case, whether or not Mr. Siebert took Mary Saylor's vehicle without her effective consent, …. But you have to ask yourself what evidence are they gonna bring to show me that he intentionally and knowingly took this car from Mary Saylor?" (RR vol. 4, p. 11) The defense attorney concluded his opening statement as follows:

> What we're proposing for you today is that because a lack of evidence, they lacked the evidence that would prove that he intentionally and knowingly took the car without consent from Mary Saylor. The presumption alone says you have to find him not guilty. And that's what we're gonna ask you to do here today is to find him not guilty because they can't prove that crucial element of the charge which is that he intentionally and knowingly took this vehicle from Mary Saylor.

(RR vol. 4, p. 12)

After both sides later rested and closed at the guilt-innocence phase of trial, the Court submitted the jury charge discussed in the State's response to the second issue on appeal.

During the State's closing argument at the guilt-innocence phase of trial, the prosecutor stated.

> We have to prove that he intentionally or knowingly operated a motor vehicle. We don't have to prove that he intentionally or knowingly stole the motor vehicle.

(RR vol. 4 p. 84)

> We also had to prove that it occurred without the effective consent of the owner Mary Saylor. You heard Mary Saylor tell you she did not give him the consent to drive the vehicle, right? We all heard that. Okay. So that's what's been proven, number one.
> 
> \*     \*     \*
> 
> We have to put prove that the Defendant, on this date in Nueces County, Texas, intentionally or knowingly operated -- not stole, not took. We only have to prove operation and you saw it with your own eyes that he was intentionally operating that vehicle, okay?

(RR vol. 4 p. 85)

> And what does your common sense tell you? It tells you that this is not a case of auto theft, nor is this a case of auto burglary. Okay. There was conversation about that because that was incidental to this case which is the unauthorized use of a motor vehicle, right? That's how police officers made contact. But this case is not anything more than whether he intentionally or knowingly operated a motor vehicle on January 5, 2014.

(RR vol. 4 pp. 86-87)

> We've proven every element of this charge beyond a reasonable doubt with absolutely no issue. The person who could have given consent

16

did not give consent. It happened on this date, it was this gentleman right here. He was intentionally and knowingly operating the vehicle as the officers told you, as you saw with your own eyes. Okay. And then you have the effective consent of Mary Saylor who told you she did not give him that consent.

(RR vol. 4 p. 87)

After the State concluded its initial closing argument, Siebert's trial attorney then argued to the jury as follows:

Because that thing in your mind, which is reasonable doubt, it tells you whether -- it tells you whether or not Mr. Siebert really intentionally and knowingly took this car from Ms. Mary Saylor because we don't know that. We don't know that. We still don't know that after the conclusion of the evidence.

(RR vol. 4 p. 91)

But could they really prove to you that he intentionally and knowingly did it without the effective consent? Because Ms. Saylor isn't the only one that can give the consent, because the law tells you that. Paragraph 2 tells you the owner of the vehicle on that day could be any person who has possession of the property whether lawful or not. And we don't know if another person had possession that day. And because we don't know, that's reasonable doubt.

(RR vol. 4 p. 92)

The State then closed its argument at the guilt-innocence phase of trial as follows:

All that we have to prove are the elements that we have, in fact, proven, the elements that's alleged in the indictment, that the Defendant was operating that motor vehicle that's owned by Mary Saylor, intentionally or knowingly on January 5th here in Nueces County.

17

(RR vol. 4 p. 93)

> We don't know if the Defendant is the person who took that vehicle, the truck, from Spohn Shoreline on January 4 of 2014, when Mary came out and discovered it was gone. But guess what? It doesn't matter. We don't have to prove that.

(RR vol. 4 p. 94)

### III. Deficient Performance.

*A. The Jury Charge.*

For the reasons discussed in the State's response to the second issue on appeal, the superfluous inclusion of mental state definitions for a result-oriented offense were harmless and irrelevant in view of the application paragraph pointing the jury to the correct application of mental states to the nature of conduct and circumstances surrounding the conduct elements of the offense. Accordingly, Siebert's attorney was not deficient in failing to object to the charge, since such an objection would have gained nothing of value for his client.

*B. Closing Argument.*

When claiming ineffective assistance for failing to object, a party must first demonstrate that if trial counsel had objected, the trial judge would have committed error in refusing to sustain the objection. *Ex parte White,* 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

18

In the present context, in order for the prosecutor's comments to be objectionable, they must have been a clear misstatement of the law, not merely an incomplete statement of the law. *See Mata*, 226 S.W.3d at 431 (it was not a misstatement of law for the State to tell the jury that the appellant could "get good time credit," even if the State omitted the statutory condition under which his good time credit could be considered by a parole board).

From a review of the prosecutor's closing argument in the present case, he did not specifically mention the knowledge element of lack of consent, but neither did he affirmatively assert that knowledge was not required. In context, moreover, the prosecutor's argument was clearly aimed not at eliminating the knowledge of lack of consent element, but at refuting Siebert's argument that the State had to prove he was the one who stole the truck. Accordingly, the State did not misstate the elements, but merely chose to highlight the conduct element rather than the circumstances element, leaving Siebert free to mention that element in his own closing argument.

However, even if Siebert could have objected to the State's argument, he may have chosen not to for strategic reasons.

Siebert's attorney stressed in his opening statement that it was the State's burden to prove that Siebert knew he lacked consent to drive the vehicle. Although the prosecutor may have left this element out of his own final argument, by this time the defense had successfully shifted the focus to its own rabbit-trial issue of whether Siebert had stolen the truck, and thereby forced the State to spend a significant amount of its jury argument attempting to convince the jury that this was irrelevant to the present charge of unauthorized use of the truck. Had Siebert then objected to the State's failure to mention the knowledge element of lack of consent to operate, this may have tended to shift the focus back to the true elements of the offense and away from his own attempts to raise the bar and require the State to prove a theft case. Accordingly, trial counsel's failure to object may well have been strategic and was certainly not so outrageous that no competent attorney would have pursued this strategy.

## IV. Prejudice.

With regard to the jury charge, even if Siebert's trial attorney should have objected to the superfluous definitions, they were clearly harmless for the reasons already discussed, and this deficiency would not have caused prejudice under the second prong of *Strickland*.

Likewise, even if Siebert's trial attorney should have objected to jury argument and his lack of objection amounted to deficient performance, at most the prosecutor merely omitted mention of an element but made no affirmative plea for the jury to ignore that element. The jury presumably understood the elements of the offense as set out in the charge and as discussed in connection with the first and second issues, such that any error in failure to object to the prosecutor's having left this element out of his jury argument would not have been likely to change the result of the proceedings or cause prejudice to Siebert.

Siebert's third issue on appeal should be overruled.

## PRAYER

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.

<div style="margin-left: auto;">

Respectfully submitted,

/s/ *Douglas K. Norman*
_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

</div>

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 4,704.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that a copy of this brief was e-mailed on August 26, 2015, to Appellant's attorney, Donald B. Edwards, at mxlplk@swbell.net.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman