**Opinion filed August 15, 2024**



## In The

# 𝕰𝖑𝖊𝖛𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

——————

## No. 11-23-00118-CR

——————

## DAVID MARTINEZ SOLIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 11104**

### M E M O R A N D U M   O P I N I O N

A jury found Appellant, David Martinez Solis, guilty of evading arrest or detention with a prior conviction, a state jail felony. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1) (West 2016). The jury assessed his punishment at confinement for a period of two years in the State Jail Division of the Texas Department of Criminal Justice (TDCJ) and a $3,000 fine, and the trial court sentenced him accordingly. Appellant raises two issues on appeal: first, that the evidence was

insufficient to support his conviction, and second, that the trial court erred when it assessed court-appointed attorney's fees against him. We modify and affirm.

*Factual and Procedural History*

On the evening of November 7, 2022, Corporal Danielle Garcia and Officer Mitchell Silva, both with the Snyder Police Department, were out on patrol. While completing a follow-up on another investigation, Corporal Garcia noticed a gold-colored SUV drive by. Corporal Garcia recognized Appellant as the driver of the gold SUV and knew that Appellant had an active arrest warrant. Corporal Garcia was able to see that Appellant was the driver through a shattered driver's side window and, at one point, made eye contact with Appellant as he passed the patrol vehicle going in the opposite direction.

Corporal Garcia testified that she and Officer Silva were not able to immediately follow Appellant, but that she knew where he lived, so she and Officer Silva drove toward Appellant's home after completing the follow-up on the other investigation. As they approached the street where it was believed Appellant lived, Corporal Garcia saw Appellant drive past the officers going in the opposite direction. Officer Silva attempted a U-turn in pursuit of the gold SUV. During the turnaround, Corporal Garcia endeavored to keep the gold SUV in sight. Corporal Garcia observed Appellant, who had exited the gold SUV, run in front of the headlights and in between two houses. Corporal Garcia pursued Appellant on foot.

The State introduced dashcam footage of the pursuit beginning near Scott Street—where Appellant passed the officers driving the opposite way—that showed the patrol vehicle turn around and continue to pursue Appellant, eventually turning on the patrol lights and pulling over the gold SUV. There is conflicting testimony about when the patrol lights were turned on and when the gold SUV was pulled over—some evidence indicates that the patrol lights were activated after the gold

2

SUV was already stopped, and other testimony indicates that the gold SUV stopped *because* the patrol lights were on.

Corporal Garcia's bodycam footage was also introduced as part of the same exhibit as the dashcam footage. Corporal Garcia did not apprehend Appellant during the pursuit on foot. Corporal Garcia testified that the patrol vehicle was clearly marked and that she was wearing a police uniform that night.

Once the gold SUV pulled over, Officer Silva exited the patrol vehicle, looked inside the gold SUV, and then followed Corporal Garcia who was in pursuit of Appellant on foot. Officer Silva also testified that he looked inside the passenger side window of the gold SUV and saw a female occupant, Crystal Rodriguez, "adjusting herself" and putting on her seatbelt, "like she had just got in the driver's seat." The dashcam footage shows, shortly after these events, the gold SUV pulling away from the curb and then pulling into Appellant's driveway, which was several houses down. After giving chase to Appellant on foot, the officers returned to the patrol vehicle and later located the gold SUV in a driveway on the same street.

The officers returned to what they believed to be Appellant's home and spoke to Rodriguez. Rodriguez testified that she lived at the home, but Appellant only visited their children there and did not live there. Rodriguez also testified that she and her son had been driving the gold SUV that evening and that Appellant had not been present in the vehicle. Rodriguez indicated that she drove home after being stopped by the police because neither officer said anything to her, and she assumed they were involved with something unrelated. Rodriguez also admitted that she wanted to get away from the police that evening because she had marihuana in the gold SUV and did not want to get into trouble.

*Issue One: Sufficiency of The Evidence*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323

S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288−89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Brooks*, 323 S.W.3d at 895; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We must defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight that their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential to the factfinder's resolution of conflicts in the testimony, the weight afforded the evidence, and reasonable inferences drawn from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.—Fort Worth 2008, no pet.). Accordingly, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*; *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

A person commits the offense of evading arrest or detention when "he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." PENAL § 38.04(a). The intent of 38.04(a) is to deter flight from arrest or detention and discourage forceful conflicts between the police and suspects. *See Alejos v. State*, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977).

The Court of Criminal Appeals has determined that the knowledge element of 38.04(a) refers to whether the person knows that the person he is fleeing from is a peace officer and whether the person knows that the peace officer is attempting to arrest or detain the defendant. *Nicholson v. State*, 682 S.W.3d 238, 245 (Tex. Crim. App. 2024). A jury may infer knowledge from circumstantial evidence, such as the acts, words, and conduct of the defendant. *Reyes v. State*, 480 S.W.3d 70, 77 (Tex. App.—Fort Worth 2015, pet. ref'd). An offense under this section is a state jail felony if the person "has been previously convicted under this section." PENAL § 38.04(b)(1). Here, Appellant's prior 2013 conviction for evading arrest was

5

admitted into evidence, and Appellant stipulated to being the same person as identified therein.

On appeal, Appellant first argues that the State failed to establish that Appellant was an occupant of the gold SUV and was the person who allegedly fled the gold SUV. Alternatively, Appellant argues that even if the evidence did establish that he fled the gold SUV that night, there was no evidence that he knew Corporal Garcia was attempting to lawfully detain him. We address each of Appellant's claims in turn.

First, Corporal Garcia's testimony was clear and positive that she saw and identified Appellant driving the gold SUV. Her testimony further established that he ran from the gold SUV then ran between houses in his neighborhood that were not his residence. However, Appellant points to conflicting testimony between Corporal Garcia and Rodriguez. While Corporal Garcia testified that she saw Appellant driving and saw him flee after the gold SUV was stopped. Rodriguez testified that "[Appellant] was not with [her] that night or that day." We may not substitute our own judgment for that of the factfinder. *Dewberry*, 4 S.W.3d at 740. The jury is the sole judge of the credibility of the witnesses and the weight that their testimony should be afforded. *See Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The jury was free to evaluate all the evidence and to find Corporal Garcia to be a more credible witness than Rodriguez. At trial, Rodriguez admitted that the officers came to her home on the evening of the incident. And when they asked her, "Do you know why he ran?" She responded, "I don't know"—rather than saying that she did not know what they were talking about or to whom they were referring. The State followed up on these comments during closing argument, positing that Rodriguez was covering for Appellant.

In addition to the testimony from Corporal Garcia and Rodriguez, the jury was provided with dashcam footage of the patrol vehicle turning around to pursue the

6

gold SUV, activating the patrol lights, pulling up behind the gold SUV, and of Officer Silva running from the patrol vehicle. Officer Silva also testified that when he approached the gold SUV—after the traffic stop—he looked inside the passenger side window and saw Rodriguez adjusting herself and putting on her seatbelt in the driver's seat, consistent with "[i]f she had been in the passenger seat and had scooted over to get in the driver's seat." Thus, based on the evidence, including Corporal Garcia's clear identification of Appellant and testimony of evasion by him, it is not unreasonable for the jury to have concluded that Appellant was present that evening and that he fled from Corporal Garcia.

Second, Appellant claims there was no evidence that he knew Corporal Garcia was attempting to lawfully detain him. Corporal Garcia testified that she was in a clearly marked patrol vehicle and wearing a police uniform that night, and that after having exited the gold SUV, Appellant ran between houses other than his own. In addition to the patrol vehicle and the fact that the officers were in uniform, Rodriguez testified that she pulled the gold SUV over *because* she had seen the officers make a U-turn and activate their patrol lights. Further, the jury was free to consider that Appellant would have motive to run in light of him having an active arrest warrant and Rodriguez having marihuana in the gold SUV.

Corporal Garcia and Officer Silva were compelled to actively pursue Appellant on foot. Again, the officers were wearing police uniforms, activated the patrol lights in the patrol vehicle, and pursued Appellant; their testimony, coupled with the other testimony and evidence in the case allowed a rational jury to conclude that Appellant was the person who fled from Corporal Garcia and knew that Corporal Garcia was attempting to arrest or detain him. Thus, the evidence firmly supports the inference of his awareness. The record contains ample circumstantial evidence indicating Appellant's cognizance that he was not only being followed by police officers, but that the officers were attempting to lawfully arrest or detain him.

7

After applying the *Jackson* standard and giving deference to the jury's decision we find that a rational jury could construe the evidence to find, beyond a reasonable doubt, that Appellant fled from Corporal Garcia and knew that Corporal Garcia was attempting to arrest or detain him. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first issue.

*Issue Two: Court-Appointed Attorney's Fees*

An indigent defendant cannot be taxed the cost of services rendered by his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. *Smith v. State*, 631 S.W.3d 484, 501 (Tex. App.—Eastland 2021, no pet.) (citing *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2023). The Texas Court of Criminal Appeals has held that "the defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013) (quoting *Mayer*, 309 S.W.3d at 556). In this regard, a "defendant who is determined by the [trial] court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *Id.* at 251 (quoting CRIM. PROC. art. 26.04(p)).

On March 10, 2023, Appellant filed an affidavit of indigence certifying that he did not have the necessary funds to hire an attorney for his defense for the instant case. The trial court determined that Appellant was indigent and appointed trial counsel to represent Appellant in this case. Appellant alleges that he was improperly assessed court-appointed attorney's fees, and the State agrees with this assertion. We also agree. The trial court determined Appellant was indigent prior to trial and did not make a new finding regarding a lack of indigency at any point following this initial finding. Subsequently, the trial court ordered Appellant to pay

8

"reimbursement fees" and the district clerk then improperly assessed the attorney's fees incurred by his court-appointed attorney as costs against Appellant. Thus, we must modify the trial court's judgment and the district clerk's bill of costs to remove the improperly assessed court-appointed attorney's fees in the amount of $3,000. *See Cates*, 402 S.W.3d at 252; *Smith*, 631 S.W.3d at 501. We sustain Appellant's second issue.

### *This Court's Ruling*

We modify the trial court's judgment and the district clerk's bill of costs to delete the improperly assessed court-appointed attorney's fees. As modified, we affirm the judgment of the trial court. *See* TEX. R. APP. P. 43.2(b).


W. BRUCE WILLIAMS
JUSTICE


August 15, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.