**Ruscel Lovel BATTISE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00935–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 31, 2008.

Rehearing Overruled March 14, 2008.

Discretionary Review Refused Oct. 1, 2008.

Terry Jennings, J., dissented and filed opinion.

James F. Keegan, Houston, TX, for appellant.

Scott Ray Peal, Assistant District Attorney, Anahuac, TX, for State.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Ruscel Lovel Battise, of unauthorized use of a motor vehicle,[1] and the trial court assessed his punishment at imprisonment for 12 months. In four issues, appellant argues that the evidence is legally and factually insufficient to prove that he (1) intentionally or knowingly operated a motor vehicle without the effective consent of its owner and (2) operated the same motor vehicle in Chambers County.

We affirm.

## Background

At approximately 1:00 p.m. on February 3, 2007, in Chambers County, Texas, Hubert Thomas ("Thomas") loaned his 1998 Lincoln Town Car to appellant, instructing him to wash the car and return it before 5:00 p.m. that same day. Thomas had known appellant for several years because appellant had been dating Thomas's sister, Jennifer Thomas. Appellant and Jennifer Thomas had borrowed vehicles from Thomas on several occasions before this incident. Upon receiving the car on February 3, 2007, appellant drove from Winnie in Chambers County to Beaumont and failed to return the car to Thomas by 5:00 p.m. Thomas waited at work for several hours for appellant to return with his car, but he was eventually forced to call his wife for a ride. Around 10:30 that evening, Thomas called the Chambers County Sheriff's Department to report the car stolen. Deputy S. Eldridge responded to the call and indicated in his report that Thom-

---

1. *See* TEX. PEN.CODE ANN. § 31.07(a) (Vernon 2003).

as had loaned appellant the car with instructions to wash it and return it. Deputy Eldridge was not aware of there being any specific time in which the car was to be returned. Deputy Eldridge testified at trial that Thomas reported that he only gave appellant permission to take the car to a car wash in Winnie. Thomas then signed an affidavit of non-consent that stated that he did not give anyone consent to use his car,[2] and Deputy Eldridge reported the car stolen.

Appellant and Jennifer Thomas, however, testified that appellant was unaware that the car was to be returned by 5:00 p.m. and that Thomas never specified a time for its return. Regarding the purpose for which Thomas loaned the car to appellant, appellant testified that Thomas was "very vague," and only told him to make sure to bring the car back clean. Although she was not actually present when Thomas loaned the car to appellant, Jennifer Thomas testified that Thomas loaned appellant the car so that appellant could get the car washed and look for a job. Appellant testified that he drove the car to the Dairy Queen in Winnie where Jennifer Thomas was working, and then he drove it to Beaumont. Once in Beaumont, appellant looked into getting a birth certif-

icate so that he could get an identification card and drove to a few other places looking for a job. Then he drove the car to a car wash in Beaumont and attempted to find someone to detail the car.

Once Jennifer Thomas realized that her brother was angry that the car had not been returned she contacted appellant while he was in Beaumont. Appellant left the car unlocked with the keys under the floor mat at a car wash in Beaumont so that Jennifer Thomas could pick it up. When Jennifer Thomas went to retrieve the car, it was not there. The next day, a Beaumont police officer recovered the stolen car from three men who had been found riding around in it. Appellant was not one of the men discovered with the stolen vehicle. The car had been damaged on the right front side, the headliner was torn out, and the back seat was ripped out.

Thomas had to pay a fine to get the car out of impoundment and a $500 insurance deductible. Shortly after the incident, appellant's attorney prepared an affidavit of non-prosecution stating that there was a "mutual misunderstanding" regarding the terms of Thomas's consent, and appellant presented it to Thomas. Thomas reviewed the affidavit and signed it.[3] Appellant and Thomas agreed that Thomas would not

---

**2.** This affidavit was a pre-printed form from Chambers County Sheriff's Department, and the entire text reads, "I, Thomas, Hubert Otis Jr., the undersigned affiant, do solemnly s[w]ear that I did not give anyone any permission, consent[,] or authority to take from my possession at ... 547 N. McDaniel, Winnie, TX 77665 in Chambers County, Texas, the following described property[:] ... 1998 Lincoln Town[ ]Car ... [,] [value listed at $11,000,] which offense occurred on or about the 3rd day of February, 2005." Thomas also designated that the property had not yet been recovered.

**3.** The pertinent part of this affidavit stated, "When I signed the form stating [that] I did not give [appellant] consent to use my 1998

Lincoln Town[ ][C]ar, I[,] in good faith[,] believed that [appellant] was deliberately disobeying my instructions as to when to return my car. After talking with family members and remembering how I had loaned other cars to [appellant] for long trips over long periods of time, and after learning from my sister that, after I signed the non-consent form, [appellant] did call her and tell my sister where I could find my car, I[,] in good faith[,] have come to believe that [appellant] and I had a mutual misunderstanding as to where [appellant] was permitted to go with my car and when [appellant] was to return my car. I[,] in good faith[,] believe that this matter should be settled in a civil court of law rather than in a criminal court of law."

prosecute appellant in exchange for appellant's paying the $500 insurance deductible. Thomas testified at trial that he had not received any payment from appellant. Appellant and Jennifer Thomas, however, both testified that appellant paid Thomas $200. Appellant testified that he paid the $200 to Thomas prior to the signing of the affidavit, and Jennifer Thomas testified that appellant paid Thomas the money on the day the affidavit was signed.

Appellant was tried before a jury in July 2006. The State subpoenaed Thomas to testify as its key witness. Deputy Eldridge also testified for the State. Appellant testified on his own behalf, and Jennifer Thomas also testified on appellant's behalf. The jury found appellant guilty, and the trial judge assessed punishment at imprisonment for 12 months with credit for time served. This appeal followed.

## Standard of Review

When an appellant challenges both the legal and factual sufficiency of the evidence, we must first determine whether the evidence was legally sufficient to support the verdict. *Harmond v. State*, 960 S.W.2d 404, 406 (Tex.App.–Houston [1st Dist.] 1998, no pet.). We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Although our analysis considers all the evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the fact finder. *Id.*

Factual sufficiency analysis is broken down into two prongs. First, we must ask whether the evidence introduced to support the verdict, although legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006) (quoting *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000)). Second, we must ask whether, considering the conflicting evidence, the jury's verdict, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Id.* at 415. In conducting this review, we view all of the evidence in a neutral light. *Id.* at 414. We are also mindful that a jury has already passed on the facts, and that we cannot order a new trial simply because we disagree with the verdict. *Id.* What weight to give contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim. App.1997). Therefore, we must defer appropriately to the fact finder and avoid substituting our judgment for its judgment, and we may find evidence factually insufficient only when necessary to prevent manifest injustice. *Id.* at 407; *see also Johnson*, 23 S.W.3d at 12.

## Analysis

### *Effective Consent*

In his first and second issues, appellant argues that the evidence was legally and factually insufficient to convict him of intentionally or knowingly operating a motor vehicle without the effective consent of its owner because appellant believed Thomas gave him consent to use the vehicle without any limitations.

A person is guilty of unauthorized operation of a motor vehicle if he "intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." TEX. PEN.CODE ANN. § 31.07(a) (Vernon 2003). Effective consent includes

"consent by a person legally authorized to act for the owner." *Id.* § 31.01(3) (Vernon Supp.2007). Thus, operating a vehicle is unlawful only if the accused is aware that the operation of the vehicle is without the owner's consent. *McQueen v. State,* 781 S.W.2d 600, 603 (Tex.Crim.App.1989); *Edwards v. State,* 178 S.W.3d 139, 144 (Tex. App.–Houston [1st Dist.] 2005, no pet.). Testimony that the car owner did not give consent to operate his vehicle can be sufficient to support a finding that an appellant knew he did not have consent to operate the vehicle. *McQueen,* 781 S.W.2d at 604–05; *Edwards,* 178 S.W.3d at 145. When an appellant asserts a mistake-of-fact defense concerning the circumstances surrounding the operation of the vehicle, the finder of fact is free to reject the evidence. *McQueen,* 781 S.W.2d at 604–05; *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986) (holding that trier of fact is exclusive judge of facts, credibility of witnesses, and weight to be given to testimony).

The evidence was legally sufficient to show beyond a reasonable doubt that appellant intentionally or knowingly operated Thomas's car without effective consent. Thomas testified at trial that he told appellant to return the car by 5:00 p.m. and that appellant's use of the car after that time was without consent. This testimony was sufficient to establish that appellant knew he no longer had consent to operate the vehicle after 5:00 p.m. *See McQueen,* 781 S.W.2d at 604–05; *Edwards,* 178 S.W.3d at 145. The jury was free to believe Thomas's testimony in spite of contrary testimony from appellant and Jennifer Thomas. *See McQueen,* 781 S.W.2d at 604–05; *Sharp,* 707 S.W.2d at 614. Therefore, viewing the evidence in the light most favorable to the verdict, we hold that the evidence was legally sufficient for a rational trier of fact to find that appellant intentionally or knowingly operated the vehicle

without Thomas's effective consent. *See King,* 29 S.W.3d at 562.

The evidence is also factually sufficient. Appellant testified that Thomas did not limit his consent to a certain time frame. Although Jennifer Thomas was not present when Thomas loaned appellant the car, she testified that Thomas had loaned appellant the car for the limited purpose of looking for a job and getting the car washed, but that Thomas had not mentioned a time for the car's return. Appellant also presented the contradiction between Thomas's affidavit of non-consent, in which Thomas said that he did not give anyone permission to use his car, and the affidavit of non-prosecution, in which Thomas said that there was a misunderstanding between himself and appellant over when appellant was to return the car.

The State introduced the testimony of Thomas and of Deputy Eldridge that Thomas's permission to appellant was limited in nature. The State also introduced evidence that appellant exceeded that consent by keeping the car much longer than he was supposed to and eventually abandoning it at a car wash in Beaumont instead of returning it to Thomas in Winnie.

Because the evidence relied on by both appellant and the State is almost exclusively testimonial and directly contradictory, the outcome depends on whose testimony seems most credible. Therefore, we must defer to the jury in this case. *See Cain,* 958 S.W.2d at 407. The jury was free to reject appellant's evidence that there was a mistake or misunderstanding regarding when he was to return the car. *See McQueen,* 781 S.W.2d at 604–05. Viewing all the evidence in a neutral light, we cannot say that the jury's verdict was against the great weight and preponderance of the evidence. *See Watson,* 204 S.W.3d at 415. Likewise, the conflicting

evidence presented by appellant at trial does not show the jury's verdict to be contrary to the great weight of the evidence. *See id.* at 415.

We overrule appellant's first and second issues.

### *Venue*

In his third and fourth issues, appellant argues that the evidence was legally and factually insufficient to establish that Chambers County was the proper venue. Venue for the prosecution of an unauthorized use of a motor vehicle case is proper either "where the unauthorized use occurred or in the county in which the vehicle was reported stolen." TEX.CODE CRIM. PROC. ANN. art. 13.23 (Vernon 2003). An objection to venue must be raised in the trial court, or venue will be presumed proven at trial unless the record affirmatively shows the contrary. TEX.R.APP. P. 44.2(c)(1).

Here, appellant did not object to venue at trial, nor does the record affirmatively show that venue was not proper in Chambers County. In fact, the record establishes that the State introduced evidence that the vehicle was reported stolen in Chambers County, where the trial took place. Therefore, we must presume that the State met its burden proving venue was proper in Chambers County. *See id.*

We overrule appellant's third and fourth issues.

### Conclusion

We affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

I agree with the majority that the evidence is legally sufficient to support the conviction of appellant, Ruscel Lovel Battise, of the offense of unauthorized use of a vehicle.[1] However, the majority misapplies the standard of review for determining the factual sufficiency of the evidence. It then erroneously concludes that the evidence in this case is factually sufficient to support the jury's implied finding that appellant operated the complainant's car "without the complainant's effective consent." Accordingly, I respectfully dissent.

In his second point of error, appellant argues that the evidence is factually insufficient to support his conviction because the evidence "did not prove that [he] knew that his operation of [the complainant's car] was without the effective consent of [the complainant]."

In a factual sufficiency review, an appellate court must view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, i.e., that the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006).

It is true, as emphasized by the majority, that we should always be "mindful" that a jury is in the best position to pass on the facts and that we should not order a new trial "simply because [we] disagree" with the verdict. *See id.* at 414. However, being mindful of these principles does not end our analysis. If so, appellate courts could never reverse a trial court judgment on the ground that evidence is

---

**1.** *See* TEX. PENAL CODE ANN. § 31.07(a) (Vernon 2003).

factually insufficient to support it. As explained by the Texas Court of Criminal Appeals,

> It is in the very nature of a factual-sufficiency review that it authorizes an appellate court, albeit to a very limited degree, to act in the capacity of a so-called "thirteenth juror." Indeed, it is this characteristic of a factual-sufficiency review that justifies the conclusion that a reversal on the basis of factually insufficient evidence has no jeopardy consequences.

*Id.* at 416–17. Thus, when an appellate court can "say, with some objective basis in the record, that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict[,] ... it is justified in exercising its appellate fact jurisdiction to order a new trial." *Id.* at 417.

A person commits the offense of unauthorized use of a vehicle if he "intentionally or knowingly" operates a vehicle "without the effective consent of the owner." TEX. PENAL CODE ANN. § 31.07(a) (Vernon 2003). "[W]hat separates lawful operation of another's motor vehicle from unauthorized use is the actor's knowledge of a 'crucial circumstance surrounding the conduct'—that such operation is done without the effective consent of the owner." *McQueen v. State,* 781 S.W.2d 600, 604 (Tex.Crim.App.1989). Thus, the State had the burden to prove to the jury that appellant was actually aware that his operation of the complainant's car was without the complainant's effective consent. *See id.*

Here, a neutral review of the record reveals that the complainant, Hubert Thomas, testified that on February 3, 2007, he loaned his car to appellant, who had been dating Thomas's sister, Jennifer,

for several years. Appellant was to wash the car and return it to Thomas by 5:00 p.m. When appellant failed to return the car, Thomas reported the car stolen at about 10:30 p.m. Chambers County Sheriff's Deputy S. Eldridge testified that he met with Thomas, who told Eldridge that he had loaned the car to appellant with instructions to wash it and return it.

However, Thomas did not tell Deputy Eldridge that he instructed appellant to return the car by a certain time. Thomas actually told Eldridge that he only gave appellant permission to take the car to a car wash in Winnie, Texas. More importantly, Thomas testified in an affidavit, on a form provided to him by Eldridge, that,

> I, [Thomas], the undersigned affiant, do solemnly s[w]ear that *I did not give anyone any permission, consent[,] or authority to take from my possession* at ... 547 N. McDaniel, Winnie, TX 77665 in Chambers County, Texas, the following described property[:] ... 1998 Lincoln Town[ ]Car ... [,] [value listed at $11,000,] which offense occurred on or about the 3rd day of February, 2005.

(Emphasis added). The preprinted form was apparently used by the Chambers County Sheriff's Office to make sure that its law enforcement authority was not used by individuals to resolve what are essentially civil, and not criminal, disputes. Although Thomas had just told Eldridge that he in fact loaned his car to appellant, Eldridge, inexplicably, accepted Thomas's sworn affidavit to the contrary and then reported the car "stolen."

Under any objective standard, based upon the complainant's perjured [2] testimony in his affidavit to Deputy Eldridge, a criminal case against appellant should nev-

---

2. A person commits the Class A misdemeanor offense of perjury if, "with intent to deceive and with knowledge of the statement's mean-

ing[,] ... he makes a false statement under oath." TEX. PENAL CODE ANN. § 37.02(a) (Vernon 2003).

er have been filed in the first place. Moreover, after appellant's arrest, the complainant, in an affidavit of non-prosecution, further testified,

> When I signed the form stating [that] I did not give [appellant] consent to use my 1998 Lincoln Town[ ][C]ar, I[,] in good faith[,] believed that [appellant] was deliberately disobeying my instructions as to when to return my car. After talking with family members and remembering how I had loaned other cars to [appellant] for long trips over long periods of time, and after learning from my sister that, after I signed the non-consent form, [appellant] did call her and tell my sister where I could find my car, I[,] in good faith[,] have come to believe that *[appellant] and I had a mutual misunderstanding as to where [appellant] was permitted to go with my car and when [appellant] was to return my car.* I[,] in good faith[,] believe that this matter should be settled in a civil court of law rather than in a criminal court of law.

(Emphasis added). The complainant's testimony that he and appellant had a "mutual misunderstanding" as to where appellant was permitted to go with the complainant's car and when appellant was to return the car went uncontradicted at trial.

The majority, emphasizing that we "must defer to the jury in this case," holds that the jury's verdict was not against the great weight and preponderance of the evidence. In doing so, the majority allows the principle that we must normally defer to the jury's fact-finding role to trump any objective assessment of the evidence before the jury. Under the majority's reasoning, as noted above, an appellate court could never reverse a judgment on the ground that the evidence is factually insufficient to support it.

The bottom line is that the State had the burden to prove beyond a reasonable doubt that appellant was actually aware that his operation of the complainant's car was without the complainant's effective consent. *See McQueen*, 781 S.W.2d at 604. Although the State, through the complainant, presented some evidence to support such an implied finding, an objective review of the record reveals two vital facts that logically preclude such a finding: (1) the complainant, himself, testified that he and appellant had a "mutual misunderstanding" as to where appellant was permitted to go with the complainant's car and when appellant was to return the car, and (2) the complainant committed perjury in his initial affidavit to Deputy Eldridge when he testified that he "did not give anyone any permission, consent[,] or authority" to take his car when he, in fact, had done exactly that.

I would hold that the great weight and preponderance of the evidence contradicts the jury's implied finding that appellant was aware that his operation of the complainant's car was without the complainant's effective consent. *See Watson*, 204 S.W.3d at 417 (explaining when appellate court has "objective basis in the record[,] that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict[,] . . . it is justified in exercising its appellate fact jurisdiction to order a new trial"). The jury's finding that appellant was so aware is clearly wrong and manifestly unjust. Accordingly, I would reverse the judgment of the trial court and remand the case for a new trial. The majority's holding to the contrary and affirmance of the trial court's judgment are in serious error.