

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00454-CR

DUSTIN RYAN DUMONT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 72,382-A, Honorable Dan L. Schaap, Presiding

February 25, 2019

## MEMORANDUM OPINION

Before QUINN, C.J.,[1] and CAMPBELL and PARKER, JJ.

A jury convicted Dustin Ryan Dumont, appellant, of unauthorized use of a vehicle[2] and sentenced him to five years' confinement. Appellant argues that his conviction should be reversed because there was no testimony that he knew he did not have the owner's consent to operate the vehicle. We affirm.

---

[1] Chief Justice Brian Quinn, not participating.

[2] *See* Tex. Penal Code Ann. § 31.07(a) (West 2016).

## Background

An Amarillo firefighter bought a green 1998 Triumph Tiger motorcycle in early May of 2016. A few weeks later, as he left for work one morning, he saw that the motorcycle was gone from the driveway where he had parked it. He proceeded to his workplace, planning to report the theft to the police once there. A police officer later took the firefighter's report at Amarillo Fire Station 9 at 34th and Western Street. Later that evening, as the firefighter was standing outside the fire station, he heard the distinctive sound of his motorcycle. Shortly thereafter, he saw a motorcycle being driven north on Western Street. He was "fairly certain" the motorcycle was his, so he and three other firefighters got in the firetruck and began to follow it. The motorcyclist drove up Western, then west on the Interstate 40 access road, with the firetruck following. The firetruck's emergency lights and sirens were not activated.

The motorcycle stopped at a residence on the corner of Lawson Street. The firefighter exited the firetruck and approached the motorcyclist, who was later identified as appellant. The firefighter commented that it was a "nice bike," as he visually examined the motorcycle. He recognized its unique stickers and saw that it had been spray-painted black, the key on the gas tank had been drilled out, it had been "hotwired," and it had a fifteen-year-old license plate bolted onto it. He also noticed several partially disassembled motorcycles in the garage of the residence. The firefighter testified that within a minute of the firefighters' arrival, the entire house was closed up: the garage door closed, the house's lights were turned off, the doors were locked, and the people who were outside the house "took off." Appellant asked the firefighter to "just take the bike and leave and let it go at that."

2

Meanwhile, one of the other firefighters had called the police, who arrived within a few minutes. Appellant told the police that his friend "Jason" had him drive the motorcycle to the house. He did not know Jason's last name or phone number. The officer searched appellant with appellant's consent, and found a small toggle switch, a device which can be used to bypass the ignition system on a motorcycle, in his left front pocket. The officer then detained appellant in the back of his patrol vehicle. When he inspected the motorcycle, he noticed that the ignition did not have a key in it and a bundle of wires was sticking out, indicating that the motorcycle had been hotwired. The officer arrested appellant on suspicion of unauthorized use of a motor vehicle.

Appellant was interviewed in jail by another officer a few days later. He told that officer that he saw the motorcycle on a trailer at Home Depot and that someone named "Ambree" had him drive the motorcycle to Lawson Street. He maintained that he did not steal the motorcycle and did not know it was stolen.

At trial, appellant testified that he became aware of the motorcycle when his brother told him that a friend had a bike for sale. Appellant said the seller had introduced himself as Jason, and appellant did not find out until after he was out of jail that his real name was Ambree. Appellant planned to meet the seller at Home Depot, but ended up meeting him at the house on Lawson Street. When appellant arrived, he saw people using jumper cables to start the motorcycle. Ambree and appellant agreed to a $600 sales price for the motorcycle. Appellant gave Ambree a $300 deposit and took the motorcycle on a test drive, during which he cashed his paycheck then went home to take a shower. Appellant drove back to the house on Lawson Street to pay Ambree the

remaining $300 of the purchase price.[3] He saw the fire truck when he dismounted. When the firefighters approached, Ambree left on another motorcycle.

Appellant testified that he believed Ambree was the owner of the motorcycle. He said that he was nervous in his earlier interview with the police, which is why he gave conflicting statements about the motorcycle. When asked if there was anything about the motorcycle that made him believe Ambree was not the owner, appellant replied, "Well, yeah, when – when I seen that the toggle switch – that he had a toggle switch to start it, it kind of – but then I was – I thought that's why it's so cheap is because it's got problems, you know what I mean?"

## Applicable Law

A person is guilty of unauthorized use of a vehicle "if he intentionally or knowingly operates another's . . . motor-propelled vehicle without the effective consent of the owner." TEX. PENAL CODE ANN. § 31.07(a). "[O]perating a vehicle is unlawful only if the accused is aware that the operation of the vehicle is without the owner's consent." *Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *Edwards v. State*, 178 S.W.3d 139, 144 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). "Testimony that the [vehicle] owner did not give consent to operate his vehicle can be sufficient to support a finding that an appellant knew he did not have consent to operate the vehicle." *Id.* (citing *McQueen*, 781 S.W.2d at 604-05; *Edwards*, 178 S.W.3d at 145).

---

[3] Appellant testified he had about $460 in his wallet; however, the arresting officer and jail bookkeeper both testified that appellant had $218 upon being booked into jail.

Standard of Review

Appellant argues on appeal that the evidence is insufficient to support his conviction because the State failed to prove that he knew the owner had not consented to his use of the motorcycle.  When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from that evidence.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Analysis

To support a conviction for unauthorized use of a vehicle, the evidence had to establish that appellant was aware that the motorcycle's owner did not consent to his operation of the vehicle.  *See* TEX. PENAL CODE ANN. § 31.07(a).  Here, the firefighter testified unequivocally that he did not give appellant or anyone else permission to drive, ride, or possess his motorcycle.  The Court of Criminal Appeals held in *McQueen* that a motorcycle owner's testimony that he did not consent to the defendant's operation of his motorcycle was legally sufficient to establish the defendant's awareness that he lacked the motorcycle owner's consent.  781 S.W.2d at 604-05.

Appellant contends there was no testimony that he knew Ambree did not own the motorcycle.  He further points to a lack of evidence indicating that the motorcycle was being sold for an exceptionally low price, or that appellant had any connection to the

5

house, or that he attempted to flee the scene. However, in addition to establishing a lack of consent from the owner, the State highlighted the inconsistencies in appellant's version of events and presented evidence that the motorcycle had been recently painted and hotwired. As to appellant's testimony that he believed that Ambree owned the motorcycle and that he had Ambree's consent to drive it, the jury was free to reject this evidence. *Id.* at 605.

Viewing the evidence in the light most favorable to the jury's verdict, the evidence is sufficient to support the jury's finding that appellant operated the motorcycle knowing that such operation was without the owner's effective consent.

Conclusion

We overrule appellant's sole issue on appeal and affirm the trial court's judgment.


Judy C. Parker
Justice


Do not publish.