# NO. 12-21-00031-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEMETRA BRUMFIELD,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

### *OPINION*

Demetra Brumfield appeals his conviction for unauthorized use of a motor vehicle. Appellant raises five issues on appeal. We modify and affirm as modified.

### BACKGROUND

Appellant was charged by indictment with unauthorized use of a motor vehicle and pleaded "not guilty." The matter proceeded to a jury trial. Following the presentation of evidence, the jury found Appellant "guilty" as charged and assessed his punishment at imprisonment for twenty years and a ten thousand dollar fine. The trial court sentenced Appellant accordingly, and this appeal followed.

### EVIDENTIARY SUFFICIENCY

In his first issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment. Specifically, he argues that there is no evidence to support that he engaged in the prohibited conduct either intentionally or knowingly.

1

## Standard of Review and Governing Law

The ***Jackson v. Virginia***[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Id.*** An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. ***Id.*** at 16.

---

[1] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To satisfy its burden of proof that Appellant committed the offense of unauthorized use of a motor vehicle as charged in the indictment, the State was required to prove that Appellant intentionally or knowingly operated another's motor vehicle without the effective consent of the owner. *See* TEX. PENAL CODE ANN. § 31.07(a) (West 2016). Effective consent includes "consent by a person legally authorized to act for the owner." *Id.* § 31.01(3) (West 2019). Thus, operating a vehicle is unlawful only if the accused is aware that the operation of the vehicle is without the owner's consent. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd). Testimony that the car owner did not give consent to operate his vehicle can be sufficient to support a finding that an appellant knew he did not have consent to operate the vehicle. *McQueen*, 781 S.W.2d at 604–05; *Battise*, 264 S.W.3d at 227; *see also Williams v. State*, No. 01-13-00439-CR, 2014 WL 3697790, at *3 (Tex. App.–Houston [1st Dist.] July 24, 2014, pet. ref'd) (mem. op., not designated for publication); *Edwards v. State*, 178 S.W.3d 139, 145 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (concluding evidence sufficient to show defendant knowingly operated vehicle without effective consent when vehicle was loaned to him by someone who defendant knew was not owner); *In the Matter of A.P.*, No. 03–97–00731–CV, 1998 WL 694913, at *2 (Tex. App.–Austin Oct. 8, 1998, no pet.) (op., not designated for publication) ("[appellant's] initial admission that he did not know who owned the van, provides further evidence that appellant knew he lacked effective consent to drive the van").

**Discussion**

In the instant case, the record reflects that Appellant drove a U-Haul box truck from Dallas, Texas to Tyler, Texas at the request of a third party, who offered to pay Appellant to purchase a recreational vehicle at Broadway Power Sports in Tyler. When Appellant and two other individuals arrived at the dealership on January 19, 2019, they attempted to purchase a four-wheeler using a check. Wesley Ward, the general manager at the dealership, became

3

suspicious based on rumors communicated to him from Dallas dealerships involving customers' arriving at dealerships in U-haul trucks and attempting to pay for recreational vehicles with checks without there being sufficient funds to cover the purchase. As a result, Ward contacted the police. Ward testified that while they waited for the police to arrive, they proceeded with the ordinary procedures of a transaction and that one of the men had begun filling out a check for the purchase. Upon arrival at the scene, police determined that the U-Haul truck was stolen.

Rabiel Smith, who operates a U-Haul dealership in Dallas, Texas, testified that a U-Haul truck went missing from his dealership's lot January 7, 2019, but the only key for the truck still was in his office. He further testified that if someone had permission to have that U-Haul truck, they would have the key that went with it. Smith stated that he called law enforcement and gave them the vehicle identification number for the missing truck, which he identified as "U-Haul truck EL3461M." Smith further stated that no one with Appellant's name ever had consent from him, as a representative for U-Haul, to use that truck. He elaborated, stating that if a person does not have a contract while in possession of a U-Haul truck, then U-Haul considers that truck stolen. Smith testified that he later received a call from a police officer in Tyler, Texas, who told him the truck missing from his lot was stolen. He further testified that the truck later was transported to the nearest U-Haul corporate store before it was put back into rental service.

Tyler Police Department Officer Andrew Mackey testified he responded to the scene on the day in question and determined, based on the license plate and the vehicle identification number of the U-Haul truck, that the vehicle had been reported stolen by the Dallas Police Department. Mackey further testified that he made contact with Appellant, who was inside the dealership sitting at the sales desk. According to Mackey, after he detained Appellant, Appellant told him that he was driving the U-Haul and did not know it was stolen. Mackey stated that Appellant initially claimed not to know the name of the person who provided the U-Haul to him but later informed Mackey that someone named "Keith," a friend-of-a-friend, whose last name he did not know, gave him the truck to use. Mackey further stated that Appellant said that Keith offered to give him one hundred fifty dollars to drive the U-Haul to Tyler to pick up a four-wheeler. Appellant also told Mackey that a wrecker service had to be called to unlock the U-Haul before he drove it to Tyler.

In sum, the evidence reflects that the U-Haul truck Appellant drove from Dallas to Tyler was stolen. Smith testified that no one with Appellant's name ever had his consent to use that

truck. *See McQueen*, 781 S.W.2d at 604–05; *Battise*, 264 S.W.3d at 227. The jury also was able to consider Smith's testimony that there only was one key to the U-Haul, which still was in his office after the truck went missing. The jury further could consider Appellant's initial statement to Mackey that he did not know the name of the person who provided the U-Haul to him along with Appellant's explanation that that person, who he later identified as "Keith," was not someone Appellant knew well. Lastly, the jury was entitled to consider the veracity of Appellant's explanation of his acquisition of the truck, which Mackey testified did not make much sense, as well as his change in demeanor, which Mackey described as shifting from cooperative to angry, as it became apparent to him that Mackey was skeptical of his story. Based on the foregoing evidence, we conclude that the jury could have found beyond a reasonable doubt that Appellant knew he lacked the owner's consent to drive the U-Haul truck on the day in question. *See McQueen*, 781 S.W.2d at 604–05; *Battise*, 264 S.W.3d at 227; *see also* TEX. PENAL CODE ANN. § 31.07(a). Appellant's first issue is overruled.

## ADMISSIBILITY OF EVIDENCE

In his third issue, Appellant argues that the trial court abused its discretion in admitting portions of a video taken by Mackey's body camera, in which he questions Appellant about a check found on his person.

### Standard of Review

We review the trial court's decision to admit evidence for abuse of discretion. *See Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). As long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. *See Montgomery*, 810 S.W.2d at 391. Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial judge gave the wrong reason for a correct ruling. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### Discussion

In the instant case, Appellant argues that the trial court abused its discretion in admitting a portion of Mackey's body camera video (State's Exhibit 1), which depicts (1) a check in Appellant's name, which was removed from Appellant's person, and (2) Mackey's questioning

5

Appellant about the check and whether he had sufficient funds in his bank account to cover the purchase of a recreational vehicle.

*Relevance*

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. *See* TEX. R. EVID. 402.

The doctrine of admissibility of same transaction contextual evidence arose from what has been termed as evidence of the "res gestae" of an offense. *Moore v. State*, 165 S.W.3d 118, 122 (Tex. App.–Fort Worth 2005, no pet.). It long has been established that extraneous offense evidence is admissible

> [t]o show the context in which the criminal act occurred—what has been termed the 'res gestae'— under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence.

*Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). In *Mayes v. State*, the Texas Court of Criminal Appeals noted that "[b]ackground evidence, once called 'res gestae' of the offense, also has come to refer to other offenses indivisibly connected with the offense charged, and not only general background evidence which is helpful to the jury's understanding." 816 S.W.2d 79, 86 (Tex. Crim. App. 1991). The court further recognized that the broadening of the term res gestae led to confusion as to what exactly constitutes res gestae evidence. *See id.* Therefore, the court took the opportunity to distinguish between background evidence and evidence of "other offenses connected with a primary offense," which the court referred to as "same transaction" contextual evidence. *Id.* at 86.

Same transaction contextual evidence is admissible as an exception under Rule 404(b) where such evidence is necessary to the jury's understanding of the instant offense. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). The court of criminal appeals has stated,

> Same transaction contextual evidence is deemed admissible as a so-called exception to the propensity rule where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." The reason for its admissibility "is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose." Necessity, then, seems to be one of

> the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense.

*Mayes*, 816 S.W.2d at 86 n.4 (citations omitted); *see also* ***Rogers***, 853 S.W.2d at 33. Necessity, then, is an "other purpose" for which same transaction contextual evidence is admissible under Rule 404(b). ***Rogers***, 853 S.W.2d at 33.

Here, the record reflects that Appellant drove a stolen U-Haul truck from Dallas to Tyler. The jury previously heard evidence regarding rumors of a criminal scheme wherein individuals would drive U-Haul trucks to recreational vehicle dealerships and attempt to pay for vehicles with checks where there were not sufficient funds to cover the purchase. The jury also heard testimony that Appellant and others arrived at the dealership in a U-Haul, which Appellant drove, and that one of the individuals had begun to fill out a check for the purchase. Thus, the evidence suggests the existence of two instances of interwoven criminal activities—Appellant's alleged unauthorized use of a motor vehicle and an attempted theft. Therefore, the State was entitled to offer proof of circumstantial evidence of Appellant's possession of this check and the purpose for which he sought to use it because such evidence of Appellant's potential involvement in an attempted theft is part of the same transaction as Appellant's alleged unauthorized use of a motor vehicle. *See **id.***

Furthermore, the State was required to prove that Appellant knew that he did not have consent to operate the vehicle in question. And while Smith's testimony establishes that Appellant did not have such consent,[2] the State was entitled to offer more proof of that element. On Mackey's body camera video, Appellant tells Mackey that he acquired the truck from an unknown individual, a man he later identified only as Keith. According to Appellant, Keith offered Appellant one hundred fifty dollars to drive the U-Haul from Dallas to Tyler to pick up a recreational vehicle. This statement to Mackey, if considered alone, potentially could leave the impression in the jurors' minds that Appellant merely was an unwitting participant in a greater criminal theft scheme, a person who innocently accepted an offer to drive a truck in exchange for money. Evidence that Appellant had in his possession a partially filled-out check, by which he personally would pay for the recreational vehicle in an amount of potentially up to $10,000.00, is relevant because it tends to show that Appellant was, in fact, more than an unwitting participant

---

[2] *See **McQueen v. State***, 781 S.W.2d 600, 604–05 (Tex. Crim. App. 1989); ***Battise v. State***, 264 S.W.3d 222, 227 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd).

in this theft operation and, therefore, knew that the truck he was driving, was not being operated with the consent of its owner. *See* TEX. R. EVID. 401.

<u>*Risk that Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice*</u>

Under Rule 403 of the Texas Rules of Evidence, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." TEX. R. EVID. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389.

When evaluating whether the trial court erred in admitting a relevant photograph or video into evidence, an appellate court's review is limited to determining whether the probative value of the photo or video is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. *Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009); *Fields v. State*, 515 S.W.3d 47, 56 (Tex. App.–San Antonio 2016, no pet.); *see also* TEX. R. EVID. 1001(a) (indicating videos are treated in same manner as photographs). Rule 403 requires both trial and reviewing courts to analyze and balance (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *See Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). In making this determination with regard to a photograph or video, a court may consider many factors, including: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in black and white or color, whether they are close-up, and whether the body depicted is clothed or naked. *See Young*, 283 S.W.3d at 874. This list, however, is not exhaustive. *See id.* The availability of other means of proof and the circumstances unique to each case should also be considered. *Id.*

In the instant case, the probative value of the evidence at issue is strong as is the State's need for the evidence. While Smith testified that Appellant did not have consent to operate the vehicle, Appellant's statements to Mackey potentially depicted him as an unwitting participant or hired hand. As set forth above, the evidence of Appellant's possession of a check and its intended use was relevant both to give the jury a greater understanding of Appellant's level of involvement as well as to help prove the critical element that Appellant knew he did not have consent to operate the vehicle. Furthermore, we do not conclude that this evidence had the

8

potential to impress the jury in some irrational, yet indelible way. The jury was tasked with determining whether Appellant's explanation about how he came to be the driver of this stolen vehicle was a valid one. And Appellant's potential involvement at a greater level than a mere driver-for-hire was important to the jury's determination of the veracity of the totality of Appellant's varying explanations. The State limited its argument on the subject to the "knowledge" element and the veracity of Appellant's story. And we do not conclude that the jury was left with the impression that the State was arguing his potential involvement in this theft scheme was proof that he was guilty of the crime with which he was charged. Moreover, this portion of the video lasted only a few minutes, and Mackey's intervening testimony on the subject was not extensive. Lastly, this evidence amounts only to a small portion of a greater video exhibit. The evidence offered is innocuous, not gruesome or otherwise shocking to the degree that it might influence the jury irrationally in and of itself. It simply amounted to discussion of Appellant's possession of a personal check and what he might intend to use that check to purchase and Appellant's reaction thereto. Accordingly, we conclude that probative value of this video evidence is not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

### *Harm*

Even assuming arguendo that the evidence was not relevant or that its relevance was greatly outweighed by the danger of its being unfairly prejudicial, the outcome would not change. If a defendant objects to the admission of evidence but the same evidence is subsequently introduced from another source without objection, the defendant waives his earlier objection. *Gilbert v. State*, 575 S.W.3d 848, 870 (Tex. App.–Texarkana 2019, pet. ref'd).

Here, Appellant objected to the admission of a portion of State's Exhibit 1, which consisted of Mackey's body camera footage.[3] However, while the exhibit was published to the jury, the State repeatedly paused the video and elicited testimony from Mackey regarding his observations of the events as depicted on the video. Appellant made no objection to Mackey's testimony about the check recovered from Appellant's person or his testimony about the subsequent conversation he had with Appellant about whether he had sufficient funds to cover the cost of a vehicle in an amount up to $10,000.00. Since substantively equivalent testimony to

---

[3] In his brief, Appellant characterizes his objection at trial as pertaining both to State's Exhibit 1 and Mackey's testimony. Based on our review of the record, there was no objection to Mackey's testimony.

the contents of the video to which Appellant earlier objected later was admitted without objection, Appellant cannot demonstrate that he was harmed by the admission of State's Exhibit 1 or otherwise has waived the issue for our review. *See Gilbert*, 575 S.W.3d at 870. Appellant's third issue is overruled.


### CONSTITUTIONALITY OF CERTAIN COVID-19 PANDEMIC SAFETY PROTOCOLS

In his second issue, Appellant argues that the trial court abused its discretion by overruling his motion to stay and his motion to quash the venire panel.

### Motion to Stay (Motion for Continuance)

In his motion to stay, Appellant argued that COVID-19 precautions, such as the venire panel members' wearing facemasks and social distancing,[4] violated his constitutional right to a fair trial and that the promulgation of the rules from which these precautions arose violate the Texas Constitution's separation of powers protections. Appellant's motion does not cite to, nor is this court aware of, a rule which would permit a trial court in a criminal proceeding to stay a jury trial indefinitely. However, on appeal, Appellant sets forth the applicable standard of review as that for reviewing a motion for continuance. Accordingly, we will construe Appellant's motion as one requesting a continuance.

A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. *Cruz v. State*, 565 S.W.3d 379, 381 (Tex. App.–San Antonio 2018, no pet.); *see Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). A trial court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement. *Cruz*, 565 S.W.3d at 381.

With regard to continuances, the Texas Code of Criminal Procedure ("the Code") provides, "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006); *see Anderson v. State*, 301 S.W.3d 276, 278–79 (Tex. Crim. App. 2009), *declined to follow on other grounds*, *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014). However, Article 29.08 provides that "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for

---

[4] The record reflects that the court's plan for resuming jury trials included, in pertinent part, having venire members wear masks while seated at socially distanced intervals. If questioned by the parties, the venire member would be instructed to lower his or her mask and don a clear face shield so that the parties could see the venire member's entire face during questioning.

the continuance." TEX. CODE CRIM. PROC. ANN. art. 29.08 (West 2006); *see Anderson*, 301 S.W.3d at 279. As the court of criminal appeals has explained, "We have construed these statutes to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance." *Anderson*, 301 S.W.3d at 279; *accord Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (refusing to "recognize a due process exception" to requirement that motion for continuance be written and sworn).

Here, Appellant's motion was unsworn. Therefore, we hold that Appellant failed to preserve his motion for continuance and its bases for review.

## Motion to Quash Jury Panel

In an attempt to take precautions against the COVID-19 pandemic, and apparently because a larger convention space was unavailable at that time to appropriately socially distance a larger venire panel, two smaller panels were summoned over the course of two days, and if the parties were unable to select a jury from the first day's panel, the second day's panel would be available as a supplement. Prior to trial, Appellant made a written objection to "any system in place for jury selection that would not allow for the viewing of all possible jury members in numeric order to exercise [a] possible shuffle." Before voir dire resumed with the second day's panel, Appellant moved to quash the remainder of the first day's venire members, from which a jury likely would not be seated.[5] He argued that by dividing the venire panel into two groupings over two days, the trial court prevented him from observing the entirety of the panel in numeric order and, thereby, prevented him from having an opportunity meaningfully to request a jury shuffle in violation of his rights under the Texas Constitution. Appellant continued, stating that he had no way of knowing if the second day's venire would result in an empaneled jury either and, thus, he also was reurging his pretrial motion. The State expressed that it had "no response." Ultimately, the trial court overruled Appellant's motion to quash the remaining venire members from the first day's panel, and neither party requested a shuffle of the first day's panel, the second day's panel, or a combination of the remainder of the first day's panel with the second day's panel. Following voir dire of the second day's panel, a jury was seated.

*Standard of Review and Governing Law*

---

[5] After disqualifications and challenges for cause, but before the parties exercised their respective peremptory strikes, twenty-four venire members remained from the first day's panel.

We review a trial court's denial of a motion to quash the venire for an abuse of discretion. ***Walker v. State***, 469 S.W.3d 204, 208 (Tex. App–Tyler 2015, pet. ref'd). An abuse of discretion occurs when a trial court's decision is so clearly wrong that it lies outside the zone of reasonable disagreement. ***Id.***

Texas Code of Criminal Procedure, Article 35.11 creates a statutory privilege that allows the parties in a criminal trial to have the names of the prospective jurors shuffled. ***Davis v. State***, 782 S.W.2d 211, 214 (Tex. Crim. App. 1989). Article 35.11 sets forth as follows:

> The trial judge, upon the demand of the defendant or his attorney, or of the State's counsel, shall cause the names of all the members of the general panel drawn or assigned as jurors in such case to be placed in a receptacle and well-shaken, and the clerk shall draw therefrom the names of a sufficient number of jurors from which a jury may be selected to try the case, and write the names as drawn upon two slips of paper and deliver one slip to the State's counsel and the other to the defendant or his attorney.

TEX. CODE. CRIM. PROC. ANN. art. 35.11 (West 2006).

In interpreting Article 35.11, we have determined that compliance with that statute is had when counsel for either the State or the defendant is allowed the opportunity to view the venire seated in the courtroom in proper sequence and is, thereafter, allowed an opportunity to exercise his or her option to have the names shuffled. *See **Davis***, 782 S.W.2d at 214 (citing ***Williams v. State***, 719 S.W.2d 573, 575 (Tex. Crim. App. 1986)). A defendant has the absolute right to a shuffle of the jury panel pursuant to Article 35.11, and that right is satisfied upon a shuffling of the panel at the request of either the state or the defendant. *See **Jones v. State***, 833 S.W.2d 146, 147–48 (Tex. Crim. App. 1992).

The purpose of Article 35.11 is to ensure the compilation of a random list of jurors. ***Id.*** at 148. It is not a particularized right to the defendant, nor is it a right of constitutional magnitude. *See **id.*** at 148 n.3; ***Yanez v. State***, 677 S.W.2d 62, 68 (Tex. Crim. App. 1984) (right to have names of members of jury panel shuffled is not of constitutional dimension and may be waived by failure to make timely request for shuffle). A request for a shuffle is timely if it is made before the State begins questioning the venire panel so long as no prospective jurors have been dismissed previously. *See **Davis***, 782 S.W.2d at 214–15.

*Discussion*

The record reflects that Appellant never requested a jury shuffle at the outset of the first day's voir dire proceedings after his motion to quash was denied. *See **Davis***, 782 S.W.2d at

214–15 (timeliness of request for jury shuffle). We reiterate that the purpose of the jury shuffle is to ensure a randomly sequenced panel. *See **Jones***, 833 S.W.2d at 148. Appellant complains that the process employed by the trial court interfered with his ability to determine whether he wanted a shuffle. But ultimately, Appellant chose not to request a shuffle for reasons which are unknown to this court. Because the trial court never was in a position to deny Appellant's request for a shuffle, there is nothing for this court to review in that regard. *See **Yanez***, 677 S.W.2d at 68 (right to shuffle may be waived by a failure to make timely request therefor).

Furthermore, Appellant argues that because this voir dire procedure prevented him from meaningfully being able to determine if he desired to request a jury shuffle, his rights under the Texas Constitution were violated. We reiterate that a defendant's right to a shuffle under Article 35.11 is not one of constitutional magnitude. *See **id.*** at 148 n.3; ***Yanez***, 677 S.W.2d at 68. Thus, even if the trial court's voir dire procedure interfered with Appellant's decision-making abilities pertaining to his exercise of his right to a jury shuffle, such procedure did not result in a violation of Appellant's rights under the Texas Constitution on that basis.

Appellant's argument to the trial court seemed to stem from his desire to pick a jury only from a single panel. But because Appellant does not make that argument in this appeal, we need not decide whether a trial court's permitting jury selection from multiple panels over the course of days based on unique community health concerns amounts to an abuse of discretion. Nonetheless, there is precedent, which does not foreclose the propriety of supplementing a venire panel with a second panel on the day after a jury could not be selected from the first panel alone. *Cf. **Williams v. State***, 707 S.W.2d 253 (Tex. App.–Houston [14th Dist.] 1986, no pet.).[6]

---

[6] In ***Williams***, the court acknowledged the uniqueness of a somewhat similar situation. *See **Williams v. State***, 707 S.W.2d 253, 256 (Tex. App.–Houston [14th Dist.] 1986, no pet.). There, the appellant initially requested a jury shuffle but later withdrew the request. After voir dire, presumably before the parties made peremptory strikes, only thirty-one prospective jurors remained. *See **id.*** The following day, an additional twelve venire persons were brought in to supplement the original panel. *See **id.*** The appellant requested a shuffle of the first day's remaining panel members along with the members of the supplemental panel, which the trial court denied. *See **id.*** The appellant then requested to shuffle the supplemental panel, which was granted. *See **id.*** Finding no error, the court of appeals affirmed the trial court's ruling. *See **id.***

We acknowledge that the facts in ***Williams*** largely are distinguishable from the facts of this case, apart from the trial court's employment of a supplemental venire panel. In ***Williams***, the appellant appealed the trial court's denial of his request for a shuffle and did not raise the constitutional arguments Appellant raises in this case. *See **id.*** Moreover, in ***Williams***, the court stated that none of the members of the supplemental panel were selected as jurors. *See **id.*** Thus, the trial court's denial of the appellant's request to shuffle a combination of the two panels in that case did not affect the composition of the jury. *See **id.*** Lastly, the ***Williams*** court did not discuss the issue of whether the appellant's decision to withdraw his request for a jury shuffle was somehow tainted by his lack of foreknowledge of or his inability to view the supplemental panel on the first day of proceedings. *See **id.***

In sum, Appellant's failure to request a shuffle leaves nothing for this court to review regarding a denial of his right to request a shuffle. *Cf. See Yanez*, 677 S.W.2d at 68. Furthermore, the trial court did not violate Appellant's rights under the Texas Constitution by dividing the venire panel into two groups over two separate days, insofar as this process may have prevented Appellant from viewing, from the outset of proceedings, the entirety of the two panels from which a jury ultimately was chosen, which resulted in his not having an opportunity meaningfully to determine whether he wished to request a jury shuffle. *See Davis*, 782 S.W.2d at 148 n.3; *Yanez*, 677 S.W.2d at 68. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to quash the remainder of the first day's jury panel. Appellant's second issue is overruled.

## BILL OF COSTS

In his fourth and fifth issues, Appellant contends the trial court erred in including certain items in the bill of costs, including the "County Specialty Court Account" fee and the fine assessed by the trial court.

With regard to the county specialty court account fee, the State not only concedes that this fee was assessed erroneously but also states that the "Local Consolidated Fee on Conviction of Felony" as a whole should not have been assessed. We agree.

The date of Appellant's charged offense is January 19, 2019. The Local Consolidated Fee on Conviction of Felony only applies to defendants who are convicted of offenses committed on or after January 1, 2020. *See* TEX. LOC. GOV'T CODE ANN. § 134.101 (West 2021). Section 134.101 assesses an additional $105 fee for persons convicted of felonies. *Id.* § 134.101(a). That $105 fee is to be allocated to the following specific accounts and funds: the clerk of the court account, the county records management and preservation fund, the county jury fund, the courthouse security fund, the county and district court technology fund, and the county specialty court account. *Id.* § 134.101(b).

Fines are punitive and intended to be part of the convicted defendant's sentence. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). Court costs, however, are "compensatory in nature" and are "a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Id.*; *Williams v. State*, 495 S.W.3d 583, 590

(Tex. App.–Houston [1st Dist.] 2016), *pet. dism'd, improvidently granted,* 2017 WL 1493488 (Tex. Apr. 26, 2017) (op., not designated for publication).

Here, the judgment of conviction reflects that the trial court assessed $261.50 in court costs. The judgment includes a document identified as "Attachment A Order to Withdraw Funds," which states that Appellant has incurred "[c]ourt costs, fees and/or fines and/or restitution" in the amount of $10,261.50. The certified bill of costs includes the following costs, as enumerated in Section 134.101, which total $105.00: $40.00 Clerk of the Court, $4.00 County and District Court Technology Fund, $1.00 County Jury Fund, $25.00 County Records Management and Preservation, $25.00 County Specialty Court Account, and $10.00 Courthouse Security Fund. Because of the statute's effective date, Appellant is not obligated to pay the Local Consolidated Fee on conviction of felony, we will modify the trial court's judgment and Order to Withdraw Funds to delete these fees. *See **Sturdivant v. State***, 445 S.W.3d 435, 443 (Tex. App.–Houston [1st Dist.] 2014, pet. ref'd). Appellant's fifth issue is sustained.

The bill of costs also includes the $10,000 fine imposed by the trial court. A bill of costs must be in writing and contain "the items of cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2018). As set forth above, fines are fundamentally different than court costs. Fines constitute punishment and are part of the defendant's sentence, whereas court costs are those financial obligations intended to recoup "the costs of judicial resources expended in connection with the trial of the case." ***Weir v. State***, 278 S.W.3d 364, 366–67 (Tex. Crim. App. 2009). As a result, we will modify the bill of costs to delete the fine. *See **Williams***, 495 S.W.3d at 591. Appellant remains obligated to pay the $10,000 fine reflected in the judgment of conviction. *See* TEX. R. APP. P. 43.2(b). Appellant's fourth issue is sustained.

## DISPOSITION

We have sustained Appellant's fourth and fifth issues. Accordingly, we ***modify*** the trial court's judgment and its attached order to withdraw funds, to reflect that Appellant's court costs are $156.50. We further ***modify*** the bill of costs to delete the $10,000.00 fine. Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment ***as modified***.

JAMES T. WORTHEN
Chief Justice

15

Opinion delivered February 16, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*


(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 16, 2022**

**NO. 12-21-00031-CR**

**DEMETRA BRUMFIELD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0489-19)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment and its attached order to withdraw funds of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment and its attached order to withdraw funds of the court below be **modified** to reflect that Appellant's court costs are $156.50 and the bill of costs be **modified** to delete the $10,000.00 fine; in all other respects the judgment of the trial court is **affirmed,** including the $10,000.00 fine set forth in the judgment; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

17